NICHOLAS SAKELOS and THEODORE CARSOTAS,
Individually and as Co-Partners, Trading as
N. SAKELOS & CO., a Corporation, et al.

*vs.*

HUTCHINSON BROTHERS, a Corporation.

*Partners and partnership: liability to creditors; voluntary
transfer of assets; fraud.*

The members of a partnership can not dispute its indebtedness to a creditor who contracted with the firm in the justifiable belief that the attitude it assumed before the public (with regard to a partnership of similar name and business) was its real status and responsibility.    .                    pp. 303-304

The transfer by a partnership of its assets to a corporation formed by the members of the partnership, in prejudice of the rights of existing creditors of the partnership, is void, as being a voluntary assignment.                              p. 304

Under sections 100-103 of Article 83 of the Code, a sale or transfer in bulk of any stock of goods, etc., is void, as against subsisting creditors, unless previous notice is given, and inventory taken as therein provided.    ·                    p. 304

In the case of such sale or transfer in violation of the statute, the transaction may be vacated at the instance of a creditor, although his claim may not have arisen from the sale by him of "goods, wares and merchandise."                    p. 305 ·

Creditors may question, either by attachment or by a bill in equity, the validity of a disposition of property by which their rights are prejudiced.    .                    pp. 304-305

*Decided November 15th, 1916.*

Appeal from Circuit Court No. 2 of Baltimore City. (HEUISLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*J. Royal Tippett* (with whom was *Richard B. Tippett* on the brief), for the appellant.

*Charles J. Bonaparte* and *Henry H. Dinneen* (with whom was *Paul M. Burnett* on the brief), for the appellees.

URNER, J., delivered the opinion of the Court.

The question to be decided on this appeal is mainly one of fact. It arises in an equity proceeding by a creditor to vacate what is alleged to be a fraudulent transfer of property by the debtor. Upon the evidence in the record, which need not be recited, the facts we are about to state have, in our judgment, been conclusively proven.

In January, 1914, N. Sakelos and Company, a partnership engaged in conducting a restaurant in Baltimore at 306 East Baltimore street, purchased from the appellee corporation certain steam tables, ovens, kitchen utensils and other articles, to the value of about $600, for use in a branch restaurant which the firm had acquired at 308 *West* Baltimore street. The negotiations for the purchase were carried on by Nicholas Sakelos, who was the head of the firm and the manager of the business at both of the places mentioned. The East Baltimore street restaurant was known as the "Olympia," and the one operated on West Baltimore street was given the name of the "New Olympia." In October, 1914, the West Baltimore street restaurant was taken over

by the New Olympia Company, a corporation formed for that purpose by Nicholas Sakelos and two other persons. The New Olympia was at that time unprofitable, and the corporation which assumed the business appears from the beginning of its brief career to have been hopelessly insolvent. A receivership for the company shortly ensued, but nothing is available for the creditors from that source. About the time of its incorporation the New Olympia Company notified the appellee that it had been formed with a view to the purchase of the restaurant business conducted at 308 West Baltimore street by Nicholas Sakelos and Theodore Carsotas, partners trading as Sakelos and Company. After the receipt of this notice a representative of the appellee had several interviews with Nicholas Sakelos, in which it was stated by the former that the appellee looked to the firm of N. Sakelos and Company for the payment of the claim now in suit; but a statement in writing was exacted purporting to charge the New Olympia Company also with responsibility for the debt. In reply to an inquiry from the appellee's representative, Mr. Sakelos stated that he and Theodore Carsotas composed the debtor firm. Upon this information suit was brought by the appellee in the following April against Nicholas Sakelos and Theodore Carsotas, partners trading as N. Sakelos and Company, and judgment by default for the amount claimed was recovered in due course. Shortly before that suit was instituted, the business, stock and fixtures of the *East* Baltimore street restaurant were transferred by N. Sakelos and Company, as a partnership, to N. Sakelos and Company, Incorporated. The latter organization was formed by the members of the pre-existing firm, who received, in lieu of their interests as partners, corresponding proportions of the corporate stock. The bank deposits of the firm were checked over to the incorporated company in the interval between the bringing of the appellee's suit at law and the recovery of the judgment against the partnership. The cred-

itors of the firm were not given any notice of these transactions.

By way of defense to this suit in equity to have the transfers just mentioned set aside as a fund upon the rights of creditors, it is asserted that the *West* Baltimore street restaurant, for which the appellee furnished the articles listed in the pending claim, was owned and operated by a partnership which was entirely distinct from the one conducting the *East* Baltimore street enterprise. The testimony of the defendants is to the effect that Theodore Carsotas, who was the co-partner of Sakelos in the West Baltimore street firm, had no interest in the East Baltimore street business, and that Costas Vlahavas and Anthony Copoulos, who were the associates of Sakelos in the firm operating the East Baltimore street restaurant, when the debt to the appellee was contracted, had no connection with the partnership which owned the other establishment. An effort was made to show that there was a difference in the names of the two partnerships, it being testified on the part of the defendants that the name of the Eastern firm was "N. Sakelos and Company," while that of the Western firm was "Sakelos and Company," the initial "N." being omitted. The proof, however, is convincing that the business of both firms was conducted in the name of "N. Sakelos and Company," and that the appellee and the public had every reason to believe that both restaurants were under the same ownership. The purchase from the appellee of the equipment for the New Olympia was negotiated in the name of N. Sakelos and Company from their place of business on East Baltimore street, and the new restaurant was thereafter managed ostensibly as its property. It was proven that on the letter heads and menu cards used at each of the restaurants the names of both appeared under that of N. Sakelos and Company as being equally subject to their control. Under such circumstances it is perfectly plain that none of the members of the firm bearing that name, even if as among themselves it may have had a dual exist-

ence, can be heard to dispute its indebtedness to a creditor who contracted with it upon the justifiable belief that the attitude it assumed before the public represented its real status and responsibility.

The transfer of the partnership assets to the corporation formed by its members is void as a voluntary assignment in prejudice of the rights of the appellee as its creditor. *Hearn v. Purnell,* 110 Md. 458; *Grover* v. *Radcliff,* 63 Md. 502; *Alexander's British Statutes, Coe's Edition,* Vol. 1, p. 499, and cases cited in note, p. 507. It is invalid also, as against the same interests, because made in disregard of the statute providing that a sale or transfer in bulk of any stock of goods, wares or merchandise shall be void, as against subsisting creditors, unless previous notice shall have been given them, and an inventory of the stock shall have been prepared, as required by the terms of the Act (Code, Art. 83, secs. 100-103; Act 1912, Ch. 451). The theory was advanced in argument that this statute does not apply in the present case for the reason that the steam tables, ovens, kitchen utensils and similar articles, purchased from the appellee, were not intended for resale and are therefore not to be regarded as being in the category of "goods, wares and merchandise" within the statutory meaning. In reference to this suggestion it need only be said that the assets and stock, which were transferred in bulk by the partnership to its corporate successor, undoubtedly included "goods, wares and merchandise" within the purview of the statute, and it is immaterial whether the articles bought from the appellee were within that description.

The contention is made that the appellee's proper remedy is by attachment, and that an adequate remedy at law being thus available, a Court of Equity has no jurisdiction in the case. The rule has been settled, however, that creditors may question either by attachment or by bill in equity the validity of a disposition of property by which their rights are prejudiced. *Stockbridge* v. *Fahnestock,* 87 Md. 136; *Lucke-*

*meyer* v. *Seltz,* 61 Md. 324; *Green* v. *Early,* 39 Md. 227; *Chatterton* v. *Mason,* 86 Md. 236.

The decree below declared the transfers in question to be void as against creditors, and directed the defendants to pay the amount of the appellee's claim within a stated time, and in default of such payment, provided for a receivership of the property and business to which the corporate defendant has succeeded. It is urged that the decree is erroneous in so far as it requires the transferee of the assets to pay the appellee's claim as the alternative to a receivership. There have been cases in which a money decree *in personam,* against one holding under a conveyance held to be void at the suit of creditors, has been decided to be improper. *Wise* v. *Pfaff,* 98 Md. 576; *Chatterton* v. *Mason, supra.* But in this case the corporate assignee, according to the testimony of the incorporator and manager whose name it bears, assumed all the debts of the assignor firm, and the decree afforded it a reasonable opportunity to obviate a receivership by the payment of the appellee's claim. In view of the special conditions presented, we have no doubt as to the propriety of the decree as a whole in the form in which it was passed.

*Decree affirmed, with costs.*