# FICO, INC. *v.* JOHN J. GHINGHER, III

[No. 29, September Term, 1979.]

*Decided February 21, 1980.*

152

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE,█ORTH, COLE and DAVIDSON, JJ.

*R. Richard Donadio* for appellant.

*Richard C. Burch,* with whom were *Weinberg & Green* on the brief, for appellee.

DAVIDSON, J., delivered the opinion of the Court.

This case involves an application of Maryland Uniform Commercial Code — Bulk Transfers, Md. Code (1975), §§ 6-101 — 6-111 of the Commercial Law Article (Bulk Transfer Act). This Act applies to enterprises whose business is the sale of merchandise from inventory. *Macke Co. v. Pizza of Gaithersburg, Inc.,* 259 Md. 479, 492-93, 270 A.2d 645, 652 (1970); § 6-102 (3). Its principal purpose is to protect creditors from commercial fraud which may occur when a merchant disposes of a major part of his inventory in a single transaction leaving his creditors unpaid. This purpose is achieved by requiring that creditors be given notice of all impending bulk transfers so that they can take appropriate action, and by imposing on the buyer an obligation to ensure that the money that he agrees to pay to the seller is applied to pay the seller's debts. § 6-101 and § 6-102.[1]

1. § 6-101, Official Comments 2-4 provide in pertinent part:

"2. Many states have bulk sales laws, of varying type and

Section 6-102 (1) and (3) provide in pertinent part:

"(1) A *'bulk transfer'* is any transfer in bulk and not in the ordinary course of the transferor's business of a major part of the materials, supplies, merchandise or other inventory . . . of an enterprise subject to this title.

. . .

(3) The enterprises subject to this title are all those whose principal business is the sale of merchandise from stock. . . ."

Section 6-104 (1) (a), (2), and (3) provide in pertinent part:

"(1) [A] bulk transfer subject to this title is ineffective against any creditor of the transferor unless:

(a) The transferee requires the transferor to furnish a list of his existing creditors . . . .

. . .

(2) The list of creditors must be signed and sworn to or affirmed by the transferor or his agent. It must contain the names and business addresses of all creditors of the transferor, with the amounts when

---

coverage. Their central purpose is to deal with two common forms of commercial fraud, namely:

(a) The merchant, owing debts, who sells out his stock in trade to a friend for less than it is worth, pays his creditors less than he owes them, and hopes to come back into the business through the back door some time in the future.

(b) The merchant, owing debts, who sells out his stock in trade to any one for any price, pockets the proceeds, and disappears leaving his creditors unpaid.

3. The first is one form of fraudulent conveyance. . . .

(4) The second form of fraud suggested above represents the major bulk sales risk, and its prevention is the central purpose of the existing bulk sales laws and of this Title. Advance notice to the seller's creditors of the impending sale is an important protection against it, since with notice the creditors can take steps to impound the proceeds if they think it necessary. . . . [Maryland] give[s] additional protection by imposing on the buyer an obligation to ensure that the money that he pays to his indebted seller is in fact applied to pay the seller's debts."

known, and also the names of all persons who are known to the transferor to assert claims against him even though such claims are disputed. . . .

(3) Responsibility for the completeness and accuracy of the list of creditors rests on the transferor, and the transfer is not rendered ineffective by errors or omissions therein unless the transferee is shown to have had knowledge." [2]

Section 6-105 provides in pertinent part:

"In addition to the requirements of the preceding section any bulk transfer subject to this title . . . is ineffective against any creditor of the transferor unless at least ten days before he takes possession of the goods or pays for them, whichever happens first, the transferee gives notice of the transfer. . . ."

Section 6-106 (1) and (2) provide in pertinent part:

"In addition to the requirements of the two preceding sections:

(1) Upon every bulk transfer subject to this title for which new consideration becomes payable . . . it is the duty of the transferee to assure that such consideration is applied so far as necessary to pay those debts of the transferor which are either shown on the list furnished by the transferor (§ 6-104) or filed in writing in the place stated in the notice (§ 6-107) within thirty days after the mailing of such notice. . . .

(2) If any of said debts are in dispute the necessary sum may be withheld from distribution until the dispute is settled or adjudicated. " [3]

---

**2.** Md. Code (1975) § 1-201 (25) of the Commercial Law Article provides in pertinent part:

"A person *'knows'* or has *'knowledge'* of a fact when he has actual knowledge of it."

**3.** § 6-106, Official Comment 3 provides in pertinent part:

"3. The methods by which the buyer may perform the duty stated in the section are various. He may, for instance, by

The question here is whether an escrow fund, established under § 6-106 (1) and held by a garnishee for the payment of creditors who were listed and given notice or who filed claims as required by § 6-104 (1) (a) and § 6-105, may be attached by a judgment creditor who was not listed or given notice, and who did not file a claim.

On 7 March 1977, Ungar Olds, Inc. (seller), agreed to sell its business and assets to Metro Olds, Inc. (buyer), a transaction which constituted a bulk transfer. § 6-102 (1) and § 6-102 (3). On 23 March 1977, in the District Court of Maryland, sitting in Baltimore County, (District Court), the appellant, Fico, Inc. (judgment creditor), one of the seller's business creditors, obtained a default judgment against the seller.

The buyer requested the seller to furnish a sworn list of all known creditors. The judgment creditor was omitted from the list supplied by the seller. The buyer sent notice of the impending transfer to all listed creditors, as well as all other creditors known to hold or assert claims against the seller. Because the buyer was unaware of the judgment creditor's claim, the judgment creditor was not notified. Finally, the buyer placed two notices of the impending transfer in the *Daily Record,* a newspaper published in Baltimore. The judgment creditor did not file a claim.

At settlement, on 7 June 1977, the buyer applied the proceeds of the transfer to the payment of all listed and known creditors whose claims were not disputed by the seller. An escrow fund was established containing an amount sufficient to pay all listed and known creditors whose claims were disputed, but an amount representing the judgment creditor's claim was not included. The appellee,

agreement with the seller hold the consideration in his own hands until the debts are ascertained, or deposit it in an account subject to checks bearing his counter-signature, or deposit it in escrow with an independent agency. If the affairs of the seller are so involved that nothing else is practical the buyer will no doubt pay the consideration into the registry of an appropriate court and interplead the seller's creditors. . . . But notice that the transferee's obligation runs, not to all possible creditors of the transferor who may appear at any time in the future, but only to existing creditors whom the transferee has a chance to identify in one of the ways provided in subsection (1)."

John J. Ghingher, III (garnishee), was designated as the escrow agent. Thereafter, the judgment creditor was not paid.

On 28 October 1977, in the District Court, the omitted judgment creditor filed an "Order for Attachment on Judgment" which was served upon the garnishee. The garnishee then filed a plea and a "Confession of Assets" in which he asserted that the omitted judgment creditor, who was neither listed nor had filed a claim, should not have recourse to the escrow fund which was established for the sole purpose of paying listed and known creditors whose claims were disputed.

The District Court determined that the escrow fund was "subject to seizure" by the omitted judgment creditor and refused to enter an order quashing the attachment. It did not, however, enter a judgment of condemnation absolute. The Circuit Court for Baltimore County reversed and entered an order quashing the attachment. The omitted judgment creditor sought and was granted a writ of certiorari by this Court. We shall reverse the Circuit Court.

The omitted judgment creditor contends that because it was not included in the list of creditors and did not receive notice of the impending transfer there was not compliance with § 6-104 and § 6-105. The omitted judgment creditor asserts, therefore, that the transfer is ineffective and that it is entitled to satisfy its judgment from the escrow fund. Finally, it concludes that because it reduced its claim to judgment before any of the listed or known creditors, its attachment acquired priority over their claims. We do not agree.

Sections 6-104 and 6-105 require, among other things, that in order to have an effective bulk transfer, the buyer must request a list of the seller's existing creditors, the seller must supply such a list, and the buyer must send notice of the impending transfer to all listed creditors and all other creditors known to him. Parties who fail to carry out these basic requirements have not complied with §§ 6-104 and 6-105 of the statute. *Johanna Farms, Inc. v. Elliott*

*Equipment Co.,* 278 Md. 137, 148-49, 360 A.2d 436, 441-42 (1976). *See Sakelos v. Hutchinson Bros.,* 129 Md. 300, 304, 99 A. 357, 359 (1916).

Section 6-104 (3) establishes, however, that unless the buyer has actual knowledge that the list is incomplete, a transfer remains effective. Thus, parties who have carried out the basic requirements of § 6-104 and § 6-105 have complied with the statute even though there are inaccuracies or omissions in the list. *See Federal Ins. Co. v. Pipeco Steel Corp.,* 125 N.J. Super. 563, 564, 566, 312 A.2d 510, 511 (1973); *Adrian Tabin Corp. v. Climax Boutique,* 40 App. Div. 2d 146, 148, 338 N.Y.S.2d 59, 62 (1972). *See also Highway Signs & Servicing Co. v. Scott,* 134 Kan. 658, 660, 8 P.2d 391, 392 (1932) (decided before the promulgation of the Uniform Commercial Code in 1951).

The sanction for noncompliance, established by the Bulk Transfer Act, is that the transfer is ineffective against the seller's creditors who may levy, attach or garnish the goods transferred to a buyer. § 6-104 and § 6-105. *See* § 6-111, Official Comment 2.[4] Where there is compliance, however, that sanction is unavailable. Consequently, an omitted creditor may not levy, attach or garnish the goods transferred to a buyer who has no actual knowledge that the list is incomplete. An omitted creditor, however, has various remedies against the seller, who is responsible for the completeness and accuracy of the list. § 6-104 (3). Although

---

**4.** § 6-104, Official Comment 2 provides in pertinent part:

"2. Except for the accuracy of the list of creditors, the sanction for non-compliance with the present section is that the transfer is ineffective against creditors of the transferor. . . . Any such creditor or creditors [of the transferor] may therefore disregard the transfer and levy on the goods as still belonging to the transferor, or a receiver representing them can take them by whatever procedure the local law provides."

§ 6-105, Official Comment 3 provides in pertinent part:

"3. The sanction for noncompliance with the [notice] section is that the transfer is ineffective against creditors."

§ 6-111, Official Comment 2 provides in pertinent part:

"2. The main sanction for non-compliance with the Title is that the transfer 'is ineffective against any creditor of the transferor.' . . . This means, e.g., that a judgment creditor of the transferor may levy execution on the property."

the applicable provisions are silent as to the remedies available to an omitted creditor, such a creditor may resort to any of the remedies otherwise provided by state law. *McClain v. Laurens Glass Co.,* 127 Ga. App. 316, 317, 193 S.E.2d 194, 195 (1972). *See* Hawkland, *Remedies of Bulk Transfer Creditors Where There Has Been Compliance with Article 6,* 74 Commercial Law Journal 257 (1969). In Maryland, the available remedies against a seller include a criminal action for false swearing which may be brought against the seller, § 6-104, Official Comment 3; [5] Md. Code (1957, 1976 Repl. Vol.), Art. 27, § 435, and a claim under application of proceeds principles. § 6-106. In addition, an omitted creditor may, in a proper case, attach, be protected by temporary restraining orders, injunctions, and receiverships, invoke the fraudulent conveyance and bankruptcy laws, and claim under third party beneficiary principles. *See* Hawkland, 74 Commercial Law Journal 257 at 262.

Here the record shows that the buyer requested the seller to furnish a sworn list of all known creditors. The buyer was unaware of the fact that the judgment creditor was omitted from the list supplied by the seller. The buyer sent notice of the impending transfer to all listed creditors as well as all other creditors known to hold or assert claims against the seller. In addition, the buyer placed two notices of the impending transfer in a newspaper of general circulation. This record establishes that even though the judgment creditor's name was omitted from the list, there was compliance with § 6-104 and § 6-105.

The omitted judgment creditor here seeks the remedy of an attachment by way of garnishment of the funds placed in escrow for the payment of all listed and known creditors whose claims were disputed. Thus, the disposition of this case depends upon a proper construction of applicable Maryland attachment law.

In Maryland, a court's authority in attachment

---

5. § 6-104, Official Comment 3 provides:

"3. The sanction for the accuracy of the list of creditors is the criminal law of the state relative to false swearing. . . ."

proceedings is derived from a "special and limited statutory power." *Belcher v. Government Employees' Ins. Co.,* 282 Md. 718, 720, 387 A.2d 770, 772 (1978); *Cole v. Randall Park Holding Co.,* 201 Md. 616, 623, 95 A.2d 273, 277 (1952); *Coward v. Dillinger,* 56 Md. 59, 61 (1881). A court may issue an attachment on a judgment against any property or credit, matured or unmatured, which belongs to a debtor. Md. Code (1975), § 3-301 (a) and (b), and § 3-305 of the Courts and Judicial Proceedings Article; Md. Rules 622 (a) and 623. *See* § 3-305, Revisor's Note.

A garnishment proceeding is, in essence, an action by the judgment debtor for the benefit of the judgment creditor which is brought against a third party, the garnishee, who holds the assets of the judgment debtor. *Northwestern Nat'l Ins. Co. v. Wetherall, Inc.,* 272 Md. 642, 652, 325 A.2d 869, 874 (1974); *Messall v. Suburban Trust Co.,* 244 Md. 502, 506, 224 A.2d 419, 421 (1966). An attaching judgment creditor is subrogated to the rights of the judgment debtor and can recover only by the same right and to the same extent that the judgment debtor might recover. *Northwestern Nat'l Ins. Co.,* 272 Md. at 650-51, 325 A.2d at 874; *Myer v. Liverpool, London & Globe Ins. Co.,* 40 Md. 595, 600 (1874). The judgment itself is conclusive proof of the judgment debtor's obligation to the judgment creditor. The sole purpose of the garnishment proceeding therefore is to determine whether the garnishee has any funds, property or credits which belong to the judgment debtor. *Northwestern Nat'l Ins. Co. v. Wetherall,* 267 Md. 378, 384, 298 A.2d 1, 5 (1972).

Here the omitted judgment creditor is entitled to recover only such interest as the seller has in the escrow fund. The garnishee concedes that under the terms of the escrow agreement, the seller is entitled to recover any surplus funds remaining after the disputed claims of listed and known creditors are satisfied. He maintains, however, that until the disputed claims are settled, the seller has no interest in the escrow fund. He asserts that because these disputed claims were not settled at the time the writ of attachment was served, and remain unsettled still, the seller has never had, and does not now have, any interest in the escrow fund.

Accordingly, he concludes that the omitted judgment creditor is not presently entitled to attach assets in that fund. We do not agree.

In essence, the garnishee's basic contention is that the seller has only a contingent interest which cannot be attached. When an interest is uncertain and contingent, in that it may never become due and payable, it is not within the scope of Maryland's attachment statute and is not subject to attachment. A contingent interest is one in which liability is not certain and absolute, but depends upon some independent event. *Belcher,* 282 Md. at 723, 724 n. 3, 387 A.2d at 773, 774 n. 3; *Fairfax v. Savings Bank of Baltimore,* 175 Md. 136, 141, 199 A. 872, 875 (1938) (survivorship trust under a will); *Safe Deposit & Trust Co. v. Independent Brewing Assn,* 127 Md. 463, 468, 96 A. 617, 619 (1916) (spendthrift trust); *Harris v. Whiteley,* 98 Md. 430, 444, 56 A. 823, 825 (1904) (curtesy).

An unmatured interest, however, is subject to attachment. § 3-301 (b) and § 3-305 of the Courts and Judicial Proceedings Article. One type of unmatured interest exists when there is no question about the fact of the garnishee's liability, although the amount of that liability may be uncertain. *Belcher,* 282 Md. at 724 n. 3, 387 A.2d at 774 n. 3; *Northwestern Nat'l Ins. Co.,* 267 Md. at 384-87, 298 A.2d at 5-7; *Messall,* 244 Md. at 510, 224 A.2d at 432. *See Ackerman v. Tobin,* 22 F.2d 541, 543 (8th Cir. 1927); *Brunskill v. Stutman,* 186 Cal. App. 2d 97, 105, 8 Cal. Rptr. 910, 915-17 (1960); *Brainard v. Rogers,* 74 Cal. App. 247, 251-53, 239 P. 1095, 1097 (1925); *Ransom v. Bidwell,* 89 Conn. 137, 142, 93 A. 134, 135-36 (1915); *Grise v. White,* 351 Mass. 427, 430-31, 221 N.E.2d 874, 876-77 (1966); *American Nat'l Ins. Co. v. United States Fidelity & Guar. Co.,* 215 So. 2d 245, 248 (Miss. 1968); *Sexton v. Phoenix Ins. Co.,* 132 N.C. 1, 2-3, 43 S.E. 479, 480 (1903); *Johnson v. Johnson,* 111 R.I. 183, 187-88, 300 A.2d 642, 644-45 (1973); *McKendall v. Patullo,* 52 R.I. 258, 261-63, 160 A. 202, 204 (1932); *Phoenix Ins. Co. of Brooklyn v. Willis,* 70 Tex. 12, 15-16, 6 S.W. 825, 829-30 (1888). In *Belcher,* this Court, while considering the distinction between an unmatured and a contingent

interest, cited *Javorek v. Superior Court of Monterey County,* 17 Cal. 3d 629, 636, 131 Cal. Rptr. 768, 777, 552 P.2d 728, 737 (1976), which articulated this distinction as follows:

> " 'Where there is no contingency as to the garnishee's liability, the only contingency being as to the amount thereof, and where the amount of the liability is capable of definite ascertainment in the future, there is no such contingency as prevents garnishment of the claim, even though, it has been held, it may be that eventually it will be found that nothing is due.' " [Quoting *Brunskill v. Stutman,* 186 Cal.App.2d 97, 105, 8 Cal.Rptr. 910, 916 (1960).]

Applying this distinction to the instant case produces a clear result.

Here, because the garnishee concedes that the seller is entitled to recover any surplus remaining in the escrow fund, there is no question concerning the garnishee's liability. While the amount of that liability cannot presently be determined, it can be definitely ascertained in the future after all disputed claims have been settled. Under these circumstances, the seller has an unmatured interest, and not a contingent interest, in the escrow fund. This unmatured interest was and still is subject to attachment. Thus, the writ of attachment in this case was proper and should not have been quashed.

Having determined that the attachment in this case was proper, we must next consider what rights a judgment creditor acquires as a result of such an attachment. An attachment on judgment served on a garnishee creates an inchoate lien which is binding not only on all the judgment debtor's assets which the garnishee then has in his possession, but also on all those which come into his hands before judgment in the garnishment action.[6] *Northwestern*

---

6. Before 1 July 1979, Md. Code (1975), § 15-602 (a) of the Commercial Law Article provided that an attachment created a lien against only those

*Nat'l Ins. Co.,* 267 Md. at 384, 298 A.2d at 5; *First Nat'l Bank of Baltimore v. Jaggers,* 31 Md. 38, 51 (1869). After the attachment is served, it is the garnishee's duty to hold the attached assets until the entry of a judgment in the garnishment action. *Northwestern Nat'l Ins. Co.,* 267 Md. at 385, 298 A.2d at 6; *International Bedding Co. v. Terminal Warehouse Co.,* 146 Md. 479, 492, 126 A. 902, 907 (1924). Thus, until judgment of condemnation absolute, the attachment serves the useful function of preventing the garnishee from prematurely disposing of any of the judgment debtor's assets.

Upon entry of judgment of condemnation absolute, the judgment creditor's inchoate lien becomes consummate. If more than one attachment on judgment is served upon the garnishee, the judgment creditors acquire priority based upon the order in which the attachments were served upon the garnishee. *Northwestern Nat'l Ins. Co.,* 272 Md. at 653, 325 A.2d at 875; *Northwestern Nat'l Ins. Co.,* 267 Md. at 387, 298 A.2d at 7. *See Ohio Brass Co. v. Clark,* 86 Md. 344, 348, 37 A. 899, 900 (1897); *Farmer's Bank of Delaware v. Beaston,* 7 G. & J. 421, 429 (1836).

Here the seller's attached assets consist of the amount which may remain in the escrow fund after the disputed claims are settled. Accordingly, an amount sufficient to pay the disputed claims is not subject to the attachment, and no lien is created with respect to that amount. Thus, the garnishee is now free, as he has been from the date the attachment was served, to use money from the escrow fund to pay listed or known creditors whose disputed claims have been settled, although he cannot dispose of any surplus before a final determination on the question whether a judgment of condemnation absolute should be entered. In effect, the judgment creditor's right to payment is

---

attachable wages actually due at the date of attachment. This section, as amended by Acts of 1978, ch. 452, effective 1 July 1979, now provides that an attachment constitutes a lien against all attachable wages which are or become due by the date the judgment, interests, and costs specified in the attachment, are satisfied.

subordinate to the rights of the listed and known creditors whose claims are disputed.

The only remaining issue here involves the question of when the judgment creditor may obtain a judgment of condemnation absolute. Before a judgment of condemnation absolute can issue, a garnishee who disputes that he holds assets belonging to the judgment debtor which may be condemned, must be notified of the attachment and given an opportunity to contest the allegation that he holds any such assets. *Northwestern Nat'l Ins. Co.,* 267 Md. at 387, 298 A.2d at 7. *See Northwestern Nat'l Ins. Co.,* 272 Md. at 652, 325 A.2d at 875. In the initial *Northwestern* case, a garnishee asserted that because there were others who had prior or superior claims to all or a portion of the garnished funds, it was uncertain whether it would have funds available to pay the judgment creditor. This Court held that under those circumstances, judgment absolute should not be entered until the garnishee was given an opportunity to establish that it did not possess assets which could be condemned.

Here the garnishee disputes that he holds assets of the seller which presently may be condemned. He argues that because the disputed claims of listed and known creditors are not yet settled, he is uncertain whether he will have surplus funds available to pay the judgment creditor. Under these circumstances, we now hold that a judgment of condemnation absolute should not be entered until it is possible for the garnishee to determine with certainty that a surplus exists, and he has been given a reasonable opportunity thereafter to establish whether he holds assets of the seller with which to pay the judgment creditor.

In summary, in a transaction in which there has been compliance with the requirements of the Bulk Transfer Act, and in which funds have been placed in escrow to pay disputed claims of listed and known creditors, a judgment creditor who was omitted from the seller's list, who was not given notice, and who did not file a claim within the requisite period of time, has no right to attach any of the funds required to settle the disputed claims. The omitted

judgment creditor may attach only the unmatured interest of the seller consisting of any surplus funds which remain once the disputed claims are settled. From the time of the attachment until a final determination as to whether a judgment of condemnation absolute should be entered, the omitted judgment creditor's right to payment is subordinate to the rights of listed and known creditors whose claims are disputed. The garnishee may use money from the escrow fund to settle the disputed claims although he is prevented from disposing of any surplus funds. The final determination as to whether a judgment of condemnation absolute may be entered cannot be made until it is possible for the garnishee to establish whether surplus funds are available and he has thereafter been given an opportunity to show whether he holds assets of the seller. Finally, upon entry of judgment of condemnation absolute, the omitted judgment creditor's lien acquires priority based on the date the attachment was served upon the garnishee.

The Circuit Court erred when it quashed the writ of attachment. Accordingly, we shall reverse.

> *Order of the Circuit Court for Baltimore County reversed and case remanded with instructions to remand to the District Court of Maryland, sitting in Baltimore County, for further proceedings in accordance with this opinion.*
> *Costs to be paid by appellee.*