671 A.2d 47

**HUNT VALLEY MASONRY, INC.**

v.

**FRED MAIER BLOCK, INC.**

**No. 345, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

Feb. 5, 1996.

Michael P. May (Gallagher, May & Burgoyne, on the brief), Baltimore, for Appellant.

Frank J. Emig, Greenbelt, for Appellee.

Argued before WILNER, C.J., DAVIS, J., and PAUL E. ALPERT (Retired), Specially Assigned.

WILNER, Chief Judge.

Appellant contends in this appeal that a circuit court has no authority to enter an *in personam* judgment against a garnishee who fails to comply with a writ of garnishment for wages. Appellant is wrong.

## THE FACTS

In September, 1992, appellee, Fred Maier Block, Inc., obtained a judgment from the Circuit Court for Howard County against three debtors, jointly and severally. One of those debtors, Melvin Dawson, was an employee of appellant. The judgment was for $4,918.61 plus attorneys' fees of $737.79, pre-judgment interest of $1,475.60, and costs of suit. On December 21, 1993, appellee obtained and served upon appellant a writ of garnishment for wages otherwise due to Dawson. The writ correctly noted the amount of the base judgment and the attorneys' fees, but listed "Interest through 11/25/93" as $2,540.63.

Through Michael May, Esq., appellant's attorney and resident agent, appellant filed a timely answer to the writ, admitting that Dawson was employed, that he received a weekly wage based on $18.50/hour for 40 hours, that there were no prior liens on the wages, and that it "has no information with which to contest the attachment." It nonetheless noted that, as the rate of interest applicable to judgments was 10%, the amount listed as interest should be $491.18, rather than $2,540.63. It also questioned the $737.79 listed for attorneys'

fees, suggesting that perhaps the attorneys' fees were part of the base judgment. Based on these possible errors, appellant refused to withhold any wages from Dawson. A copy of the answer was served directly on Block, as no attorney was identified on the writ.

In fact, Block was represented, and, on February 3, 1994, having himself received no response to the writ, counsel moved for an order to have appellant show cause why it should not be held in contempt for failing to answer the writ. Appellant responded that an answer had, indeed, been filed and, claiming that the motion was filed without substantial justification, sought an attorney's fee of $300.

Block promptly withdrew the motion for show cause order but opposed appellant's motion for attorneys' fees. In that opposition, it averred that the proper interest figure was $2,048—$1,475.60 in pre-judgment interest and $573.17 for post-judgment interest at the 10% rate—that the total amount owed on the judgment, through November 23, 1993, was $7,605.23 plus court costs, and that, to the extent of any discrepancy between that amount and the amount stated in the writ, Block would accept the lesser amount. The opposition also pointed out that the writ was sent to Mr. May in an envelope bearing counsel's name and business address, implying that Mr. May should have known to send a copy of the answer to him, rather than to his client.

On February 28, 1994, the court entered an order denying the previously withdrawn motion to show cause and ordering both Block and its attorneys to pay Mr. May $300.

On March 17, 1994, Block's attorney, Mr. Emig, wrote to Mr. May, confirming the proper amount of the judgment ($7,605.23), noting that no statement regarding Dawson's earnings had been received, and requesting an accounting. Emig authorized appellant to deduct the $300 due to Mr. May from the balance due Block. May and appellant apparently ignored this letter, so, on April 13, Mr. Emig wrote again, requesting a response and warning that, if none was received, he would move for judgment. Mr. May responded on April

18, confessing that he had "practically no experience in this area of law," and requesting a copy of the judgment. That was sent to him four days later, along with another request for an accounting. In a letter to Mr. Emig dated May 3, Mr. May claimed that he could not tell from the judgment how much should be deducted from Dawson's pay. It appears that the lawyers then had a telephone conversation regarding the matter, for, on May 27, 1994, Mr. Emig wrote to Mr. May, reminding him that he had promised to send a check and that none had been received.

On June 8, 1994, Block moved for judgment. Through Mr. May, appellant responded that the discrepancy regarding the interest had "not been cleared up" and argued that it was "ethically inappropriate" for May to advise his client to deduct anything from Dawson's pay without knowing "what the amount of the judgment is." Block responded, once again advising of the correct amount of the judgment. To avoid any dispute over the $300, Mr. Emig, on June 27, 1994, sent Mr. May a check for that amount.

Prior to a hearing on the motion, Block received a partial payment on the judgment from one of the other debtors in the amount of $5,774.56, thereby reducing the outstanding judgment to $2,259.18. In an order filed October 24, 1994, the court (1) denied the motion for judgment, (2) fixed the amount of the underlying judgment at $2,259.18 as of July 25, 1994, (3) directed that that amount plus 10% on the original judgment amount of $4,918.61 be deducted from Dawson's wages commencing as of December 27, 1993, and (4) ordered appellant to provide an accounting of wages paid to Dawson since service of the writ of garnishment and to remit all amounts due Block within 30 days.

Rather than comply with that directive, appellant filed a motion to revise the order, disputing the commencement date for the withholding. The court ended this unabated pattern of denial and obfuscation on December 6, 1994, by denying the motion to revise, entering judgment against appellant in the

amount of $2,259.18 plus additional interest of $73.97, and ordering appellant and May to pay attorneys' fees of $150.

## DISCUSSION

Appellant raises in this appeal the single issue of whether Md.Rule 2–646, governing wage garnishments, "permits judgment to be entered directly against a garnishee." It notes that there are two rules governing garnishments—Rule 2–645, dealing with garnishments of property generally, and Rule 2–646, dealing specifically with garnishments of wages. It then observes that Rule 2–645 provides for a judgment against the garnishee for the amount the court finds to be due under the writ, whereas Rule 2–646 contains no such provision. Appellant relies upon this absence for its view that no judgment is permissible against a garnishee of wages. That argument overlooks both the basic nature of a garnishment proceeding, including an action to garnish wages, and the history and purpose of Rule 2–646.

The nature of a garnishment proceeding was aptly described in *Fico, Inc. v. Ghingher,* 287 Md. 150, 159, 411 A.2d 430 (1980):

"A garnishment proceeding is, in essence, an action by the judgment debtor for the benefit of the judgment creditor which is brought against a third party, the garnishee, who holds the assets of the judgment debtor.... An attaching judgment creditor is subrogated to the rights of the judgment debtor and can recover only by the same right and to the same extent that the judgment debtor might recover.... The judgment itself is conclusive proof of the judgment debtor's obligation to the judgment creditor. The sole purpose of the garnishment proceeding therefore is to determine whether the garnishee has any funds, property or credits which belong to the judgment debtor."

(Citations omitted.)

That principle also applies to attachments of wages. *See Bendix Radio Corp. v. Hoy,* 207 Md. 225, 114 A.2d 45 (1955).

Until 1979, there was no separate rule governing wage garnishments. Garnishments generally were dealt with in Rules F1 through F5. Under those rules, if a garnishee or other claimant failed to file a timely answer to the writ, the creditor could proceed to prove the amount of assets in the hands of the garnishee subject to attachment, whereupon a "judgment of condemnation absolute shall be entered against the garnishee." Rule F2. Under Rule F3, if the garnishee confessed assets, a judgment of condemnation would be entered for the amount confessed.

One special problem existed with respect to the garnishment of wages, however, stemming from the statutory provision that such an attachment would not affect any wages of the debtor that were not actually due at the date of the attachment. *See* 1957 Md.Code, art. 9, § 31. Because of that provision, it was necessary for the judgment creditor to file successive wage garnishments at the end of each pay period in order to capture the wages due to the debtor for that period.

By 1979 Md.Laws, ch. 452, the Legislature repealed that limitation and provided instead that an attachment levied against wages constitutes a lien on all attachable wages payable at the time the attachment is served or which become payable "until the judgment, interest, and costs, as specified in the attachment, are satisfied." *See* Md.Code Com.Law art., § 15–602. The Legislature, in the same Act, directed that, while the attachment remains a lien, "the employer/garnishee shall withhold all attachable wages payable to the judgment debtor and remit the amount withheld to the judgment creditor or his legal representative...." *Id.* at § 15–603.

The 1979 enactment created a very different procedure for wage attachments, necessitating a change in the rules dealing with those kinds of garnishments. As noted in the Rules Committee's Sixty–Fourth Report to the Court of Appeals, Rules F1 through F5 required successive writs for increments of attachable wages as they accrued in successive pay periods until the judgment was satisfied, which was an inefficient and expensive practice. The Committee stated that the new stat-

ute would require either a substantial amendment to the existing attachment rules or a new free-standing rule providing an exclusive procedure to be followed in wage attachments, and it opted for the latter approach. The proposed rule, which was adopted by the Court, is essentially what is now embodied in Rule 2–646.

Under the general rule—Rule 2–645—the garnishee is obliged to file an answer to the writ (1) stating whether the garnishee is indebted to the judgment debtor or has possession of the debtor's property, and (2) specifying the amount and nature of any such debt or property. The garnishee may, but is not required, to pay any garnished property into court; if he does not, he may await a judgment from the court specifying the amount owed by the garnishee.

If the garnishee fails to answer, the judgment creditor may move for a default judgment against the garnishee under Rule 2–613. If a timely answer is filed and there is no dispute as to its assertions, judgment may be entered accordingly. If the creditor contests the answer, the matter proceeds "as if it were an original action between the judgment creditor as plaintiff and the garnishee as defendant." Rule 2–645(g).

The end result of a garnishment under Rule 2–645 is a judgment "for the amount admitted plus any amount that has come into the hands of the garnishee after service of the writ and before judgment is entered, but not to exceed the amount owed under the creditor's judgment against the debtor and enforcement costs." Rule 2–645(j).

As noted, the current statute governing the garnishment of wages requires the employer/garnishee to begin withholding wages upon service of the writ and to remit the withheld amounts to the judgment creditor (or his attorney) or, if there is a dispute, to the court. That duty makes the requirement of an answer more important, so instead of simply providing for a default judgment in the absence of an answer, the rule permits the court to enforce the duty to answer by contempt. If an answer is filed asserting any defense other than non-employment of the debtor, the matter is to be set for hearing.

Tracking the statute, Rule 2-646(i) defines precisely the duties of the garnishee:

"While the garnishment is in effect, the garnishee shall withhold all garnishable wages payable to the debtor. If the garnishee has asserted a defense or is notified that the debtor has done so, the garnishee shall remit the withheld wages to the court. Otherwise, the garnishee shall remit them to the creditor or the creditor's attorney within 15 days after the close of the debtor's last pay period in each month. The garnishee shall notify the debtor of the amount withheld each pay period and the method used to determine the amount. . . . "

If this is followed, there is no need for a judgment against the garnishee; if the money is remitted as the law requires, either the creditor will have it or it will be within the court's control and the court can divide it in accordance with its resolution of any dispute regarding the creditor's entitlement. If, as occurred here, however, the employer ignores the writ and its obligations under the statute and the rule by failing to withhold and remit the wages, there is a need for a judgment. Keeping in mind the principles enunciated in *Fico, supra,* 287 Md. 150, 411 A.2d 430, this remains in the nature of an action by the judgment debtor for the benefit of the judgment creditor against the garnishee to satisfy a debt due by the garnishee to the judgment debtor. Once the amount of that debt is ascertained, if the garnishee has failed to discharge it in accordance with the law, it is perfectly appropriate for judgment to be entered against him. The power to enter a judgment does not need to be conferred by a rule of procedure; it is an inherent, substantive power that the court has in order to resolve disputes within its jurisdiction and to make manifest its decision.

In this case, appellant has deliberately ignored the clear mandate of the statute and the rule. It asserted a defense on behalf of Dawson challenging the calculation of the interest, which it had a right to do, but while that matter remained in dispute, it was obliged to withhold wages, at least up to the

amount that it did not contest, and remit that amount to the court. The uncontested base amount of the judgment was $4,918.61; appellant admitted in its answer that Dawson was employed and that his weekly wage was $740 ($18.50 × 40). There is simply no excuse for appellant's failure to withhold that amount, less any exemptions allowed by law. Judgment was properly entered.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.