600 A.2d 1194

GORDON, FEINBLATT, ROTHMAN, HOFFBERGER & HOLLANDER

v.

Lee D. GERHOLD, et al.

Nos. 547, 548, Sept. Term, 1991.

Court of Special Appeals of Maryland.

Feb. 5, 1992.

Robert E. Sharkey (Gordon, Feinblatt, Rothman, Hoffberger & Hollander on the brief), Baltimore, for appellant.

Jerome T. May (Andrea E. Colender on the brief), Annapolis, for appellee, Helen L. Gerhold.

William E. Kirk (Towshend & Kirk, P.A. on the brief), Annapolis, for appellee, Annapolis Banking and Trust Co.

Argued Before MOYLAN, GARRITY, and ALPERT, JJ.

**362**

ALPERT, Judge.

This appeal is about the priority of writs of attachment. The appellant asks us to decide whether a court may grant one spouse, at the termination of a divorce proceeding, an *ex parte* order to eliminate the automatic stay of enforcement of judgments in her favor. The appellant also asks us to determine whether the lower court erred in denying its motions for release of attached property and in declaring null and void certain of its writs of garnishment and dismissing others. While we would answer the first inquiry in the negative, we shall nevertheless affirm.

## FACTS

This appeal began with a series of sorry events not directly at issue in the case *sub judice:* Lee Gerhold (Lee) and Helen Gerhold (Helen) (one of the appellees) had been married more than fourteen years when Lee was arrested and charged with conspiring to murder Helen. Lee entered guilty pleas, and is incarcerated, where he likely will remain for the rest of his life.[1]

Immediately after Lee was arrested, Helen filed a Complaint for Divorce, and a motion requesting an order enjoining Lee from transferring his assets. On January 4, 1989, the trial court granted this motion, and enjoined Lee from selling or spending any of his assets without the court's approval.[2] The court later amended the injunction to allow for the sale of the Gerholds' house, the proceeds from which were held by their attorneys in trust for the benefit

---

1. When police investigated Lee's plot to murder Helen, they discovered that years ago, Lee hired a killer to murder his first wife. He pleaded guilty to the charges associated with this earlier crime.

2. The Order provided that:
   the Defendant, or anyone acting pursuant to his request or direction shall be, or hereby is, enjoined from liquidating, transferring, selling, or spending any of the funds in any of the accounts set forth in Plaintiff's Motion for Ex Parte Relief or any other savings or investment accounts or stocks, bonds, investments, or other assets over which the Defendant has access and control.

of both Lee and Helen. The interest-bearing escrow accounts contain in excess of $317,000, and their disposition is the source of the present controversy.

Helen also proceeded against Lee in a tort action, suing him for damages for intentional and negligent infliction of emotional distress, fraud, and other torts. That case was *Gerhold v. Gerhold,* Case No. 1122242, Circuit Court for Anne Arundel County. Although the tort case was not consolidated for appeal with the other cases discussed *infra,* it is relevant to the instant appeal in that Helen obtained a writ of garnishment pursuant to an order allowing attachment before judgment, and this writ is among those in issue here.

Appellant, Gordon, Feinblatt, Rothman, Hoffberger and Hollander (the law firm) obtained from Lee two Confessed Judgment Promissory Notes: one for $20,000, and the other for $55,000. Lee owed the firm these sums for the payment of fees and disbursements in connection with the firm's ongoing legal representation of him, including representing him in the divorce proceedings. On January 27, 1989, the Circuit Court for Anne Arundel County entered judgment for $20,000;[3] on May 24, 1990, the same court entered judgment for $55,000.[4] We note that Lee signed the $20,000 note just two and one-half weeks after the court enjoined him from transferring his assets. Lee signed the other note in May, 1990, also after the injunction issued.

The Gerholds' divorce case proceeded to trial in early September, 1990. Helen's counsel informed the court of the $20,000 judgment; Helen's attorney was unaware of the $55,000 judgment, and Lee's counsel did not volunteer the information. In the week before closing arguments, Helen's counsel discovered the $55,000 judgment and also discovered that Writs of Garnishment had been issued, and that the law firm stood ready to garnish $75,000 of the

---

3. *Gordon, Feinblatt, Rothman, et al. v. Lee D. Gerhold,* No. 1118808.

4. *Gordon, Feinblatt, Rothman, et al. v. Lee D. Gerhold,* No. 1122312.

funds it held with Helen's counsel in trust.[5]  The court appointed as trustee P. Tyson Bennett, Esquire, and directed that the funds be divided for deposit at Maryland National and three other financial institutions: Farmers National Bank of Maryland, Annapolis Bank and Trust, and Augusta Federal Savings Bank.

On January 11, 1991, the court entered a judgment of divorce, and granted Helen a monetary award of $522,000, as well as more than $44,000 in attorneys' fees.[6]  That same day, Helen also obtained an *ex parte* order eliminating the automatic ten day stay on enforcing judgments so that she could execute her judgments immediately.  The court granted Helen multiple writs of garnishment, including writs to garnish Lee's interest in the accounts administered by Bennett.[7]  Helen's purpose in obtaining the *ex parte* order and the writs of garnishment was to establish a priority in her favor against Lee's other judgment creditors:  the trust account being Lee's sole remaining substantial asset, Helen's only serious hope of obtaining payment of her judgments is to be first in line among his creditors.

Helen's writs of garnishment were served on Bennett on January 11; they were served on the banks on January 14.

---

**5.**  Helen requested that the court impose a constructive trust upon the fund containing the house sale proceeds.  The parties disagree as to whether the court granted the trust, but during the court's motions hearing on February 21, 1991, the court made clear that it had not imposed a constructive trust.

**6.**  Helen asserts that the court made this award even though it knew that she could not collect this sum because the couple's assets did not approximate that amount.  The court assigned Lee's insurance business its value upon the date of his arrest, rather than its value upon the date of his trial.  It gave the business this higher value so that if additional assets ever were discovered, Helen would be able to gain access to them.  Nevertheless, "it was clear that the only real asset the parties had was the funds in trust—the same funds that the law firm was trying to garnish."

**7.**  Three of the four financial institutions are involved in this appeal: Farmers National Bank of Maryland, Annapolis Bank and Trust, and Augusta Federal Savings Bank.  *See supra,* note 17.  The account held at Maryland National Bank is not directly involved in this appeal.

On January 18, Helen filed two motions to alter or amend the judgments entered in the divorce case.

On January 16, 1991, Helen also obtained in the tort suit an order allowing her to attach before judgment the funds Bennett held. She obtained a writ of garnishment and served this on Bennett.

On January 18, the law firm sought and was issued writs of garnishment in the confessed judgment cases. These were served against Bennett and the banks to garnish Lee's interest in the trust accounts. The writ intended for Bennett was served upon his secretary, however, who was not authorized to accept personal service on Bennett's behalf.

On January 21, Lee filed a motion to vacate Helen's January 11 *ex parte* order and to quash her writs of garnishment on the ground that the order eliminating the ten day stay of execution was improper.

On January 22, Helen asked for additional writs of garnishment; the court issued these on January 23. Among these was an additional writ for Bennett, and this was served on January 28.

The law firm also sought to obtain a share of Lee's assets in the divorce case: arguing that its writs of garnishment had priority over Helen's writs of garnishment, the firm on February 11 filed on its own behalf four motions for release of property to release from Helen's garnishments Lee's interest in the accounts.

In late February, the court conducted a hearing on open motions, and on February 21 and 22, 1991, ordered the cases consolidated for the garnishment proceedings. It also ordered that all writs of garnishment to the banks were null and void. It ordered Bennett to continue to hold the funds in trust, except for sums to be disbursed to Helen. It dismissed the writs of garnishment served on Bennett, and denied the law firm's motion to release property. The court also denied the law firm's motions to vacate Helen's *ex parte* order, and to quash the writs issued on her behalf.

Finally, the court ruled on the parties' several motions to amend or alter the judgments in the divorce case.

The law firm now appeals. The firm's two confessed judgment cases and the divorce case were consolidated for appeal.[8] The law firm's questions on appeal are as follows:

1. Did the court err in granting Helen Gerhold's *ex parte* motion to eliminate the automatic stay of enforcement of the judgments in her favor?

2. Did the court err in denying the Law Firm's Motions For Release of Property to release from Helen Gerhold's garnishments Lee Gerhold's interest in the accounts held by the Banks and Bennett and declaring its writs of garnishment on the Banks null and void and in dismissing its writ of garnishment on Bennett?

## THE EX PARTE MOTION ELIMINATING THE AUTOMATIC STAY OF ENFORCEMENT

■ The law firm argues that the court was powerless to eliminate the automatic ten day stay of enforcement provided in Maryland Rule 2–632 because this case does not fall within any of that rule's exceptions. Helen's motion to eliminate the automatic stay in part was based upon that rule, and upon Maryland Rule 1–204, which ostensibly allows a court to shorten the period required by other rules.

The law firm attacks this foundation on several fronts. It argues that Rule 1–204 does not apply to the instant case because Maryland Rule 2–632(b) prohibits enforcement of a judgment for ten days, and is not a provision "allowing" or "requiring" that an act be done. Furthermore, it argues that Rule 1–204's purpose is to modify the time during which a pleading or paper must be filed, and that it cannot be used to eliminate the stay of enforcement in issue here. Finally, it contends that the court had no basis for issuing

---

8. The fourth case related to these issues, in which Helen sued Lee for intentional and negligent infliction of emotional distress, fraud, and other torts, was not consolidated with the others. See *supra.*

an *ex parte* order [9] because "[t]he only 'prejudice' which Helen Gerhold alleged is that she would lose the opportunity to effect a priority in her favor, which she has no right to in the first place." [10]

Maryland's Stay of Enforcement rule is derived from Federal Rule of Civil Procedure 62, and although there are some differences, their contents are substantially the same. Maryland Rule 2-632(b) provides that:

> [e]xcept as otherwise provided in this Rule, enforcement of a judgment is automatically stayed until the expiration of ten days after its entry. An order granting an injunction or appointing a receiver is not automatically stayed unless the Court so orders.

---

**9.** Rule 1-204(b) provides:

> (b) Ex Parte Order. The court may enter ex parte an order as provided for in ... this Rule only if the motion sets forth facts which satisfy the court that the moving party attempted but was unable to reach agreement with the opposing party and that the moving party notified or attempted to notify the opposing party of the time and place the moving party intends to confer with the court; or (2) facts which satisfy the court that the moving party would be prejudiced if required to comply with the requirements of subsection (b)(1) of this Rule.

**10.** Helen's argument in rebuttal is substantially founded upon the equities of the situation: Lee's share of the trust accounts is the only asset from which she can satisfy the judgments she has against him. Moreover, Helen is 68 years old, unequipped to begin a career, and the victim of a terrible conspiracy perpetrated by her husband. She has been living on the charity of her children, and for the rest of her days must subsist on whatever she obtains as the result of these proceedings.

Helen also argued that Maryland Rule 2-651 allows the court in which a judgment has been entered to order ancillary relief in enforcement of a judgment. The firm challenges this, asserting that the rule allows relief when the time for enforcement has arrived, and not as a means of eliminating the stay of enforcement of judgment. Maryland Rule 2-651 reads as follows:

> Upon motion and proof of service, a court in which a judgment has been entered or recorded may order such relief regarding property subject to enforcement of the judgment as may be deemed

*See also* F.R.C.P. 62(a) ("no execution shall issue upon a judgment nor shall proceedings be taken for its enforce- ment until the expiration of 10 days after its entry").

Both rules were intended to give the opposing party an opportunity to file post-trial motions. The Court of Appeals Standing Committee on Rules of Practice and Procedure meeting minutes contain the following explanation of the automatic stay provision:

> In section (a) of this Rule, enforcement is automatically stayed to allow the defendant time to file any of several motions made available under the trial rules. The ten day time period correlates with the time for filing such motions pursuant to those trial rules. While this automatic stay affords the defendant time to file allowable motions, the ten days does not postpone levy so significantly as to afford the judgment debtor an unnecessary head start. However, since all enforcement, including levy, is delayed ten days, it should be unnecessary for the sale rule to expressly provide for delay of sale of levied property until thirty days after entry of the judgment.

Rules Committee Minutes, May 21/22, 1982 at 12. *See also* 7 Moore's *Federal Practice* ¶ 62.03 (1990) (Rule 62(a) gives party time to prepare for appeal or determine what other method of review should be taken).

■ Although we find no Maryland cases on point, our survey of federal case law makes clear that where an appeal is not in issue, either because an appeal is unavailable or because the stay would impede some other judicial purpose, the automatic stay may be eliminated. Where the judgment is appealable, however, or where its suspension would not thwart some other legitimate judicial purpose, the stay remains in force.

For example, in *Iowa Beef Processors v. Bagley*, 601 F.2d 949, 955 (8th Cir.1979), *cert. denied*, 441 U.S. 907, 99 S.Ct.

---

necessary and appropriate to aid enforcement of the judgment pursuant to these rules.

1997, 60 L.Ed.2d 376, the court of appeals found that Rule 62(a)'s automatic stay provision does not apply where no appeal lay from a district court order partially lifting a protective order allowing a congressional subcommittee to take possession of documents in the course of discovery. The appellant was a meat packing concern that had been the subject of numerous private antitrust suits. After the departure of one of its vice presidents, the appellant alleged that the vice president had taken with him confidential business documents and disclosed them to others. Upon the appellant's suit against its former vice president and those to whom he allegedly disclosed the documents, the district court issued a protective order preventing disclosure of the concern's confidential business information. In the meantime, a congressional subcommittee became interested in meat industry pricing practices, and served upon the defendants subpoenas compelling production, *inter alia,* of the protected documents. At the former vice president's request, the district court dissolved the protective order, to the extent necessary to allow him to comply with the subpoena. When the subcommittee learned of the district court's order, it took physical possession of the documents.

The meat packing concern meanwhile appealed, and the question presented was whether the district court abused its discretion in granting the vice president's motion to lift the protective order. Although the subcommittee was not a party either to the underlying litigation or to the appeal, the meat packing concern asked the court of appeals to order the subcommittee to return the documents and to refrain from revealing their contents. *See id.* at 955. The meat packers argued that the subcommittee unlawfully obtained the documents: that Federal Rule of Civil Procedure 62(a) operated automatically to stay for ten days the order partially lifting the protective order. *Id.*

The appeals court found that the subcommittee did not violate the protective order when it took possession of the documents. *Id.* The district court order that partially lifted the protective order was not a 'final decision' because

the order is not one that ends the litigation, leaving the court nothing to do except to execute the judgment. *See id.* at 952 (quoting *Catlin v. United States,* 324 U.S. 229, 65 S.Ct. 631, 89 L.Ed. 911 (1945)). In that the order was not a final decision, no appeal was possible, and the automatic ten day stay provision does not apply. *Id.* at 955.

This theme echoes the one expressed in *In re Manufacturers Trading Corp.,* 194 F.2d 948 (6th Cir.1952), in which the appellant was not entitled to an automatic stay because the order was not appealable. A loan company filed a petition in bankruptcy for reorganization, whereupon the district court appointed a trustee to investigate the loan company, and to make a report to creditors, stockholders, and to the SEC. The appellant was served with a subpoena requiring him to appear before a special master in the bankruptcy proceedings and to bring documents relating to accounting work he performed for the loan company. *Id.* at 950.

The appellant appeared before the Special Master, and inquired of the Trustee in Bankruptcy what his purpose was in examining the appellant. The Trustee responded that he was trying to determine whether there was a basis for a cause of action in the Trustee's favor against the appellant's accounting firm arising from its preparation of audit reports over the years. *Id.* at 950–51. The appellant thereupon submitted to the Special Master a motion to quash the subpoena, arguing that the Trustee's purposes were improper. The Special Master denied this motion on the ground that fishing expeditions of this sort are appropriate; he also assured the appellant that the transcript of the bankruptcy proceedings could not be used as evidence. *Id.* at 951. The examination proceeded, but the appellant repeatedly refused to answer one of the Trustee's questions.

The appellant applied to the district court to sustain the motion to quash, but the district court also denied the motion, and directed the appellant to continue the examination before the Special Master. The appellant again refused to answer the question. The Special Master certified the

proceedings to the district court, and recommended that the court punish the appellant for contempt. The district court eventually held the appellant in contempt, putting him into custody until he obeyed the court by submitting to the examination.

On appeal, the appellant argued, *inter alia*, that the district court improperly denied his motion to quash the subpoena and ordered him to submit to examination; he also complained that the judge erred by entering the order adjudging him guilty of contempt during the period in which the appellant claimed that he was entitled to an automatic ten day stay after entry of the orders. *Id.* at 952.

The Sixth Circuit Court of Appeals wrote that "[i]n order to qualify ... for the automatic ten-day stay, a judgment or order must be one from which an appeal may be taken." *Id.* The court found that although the United States Code grants appeals from interlocutory orders in proceedings in bankruptcy (of which this was one), "this does not mean that every order in the course of the proceedings is appealable. Due regard for the efficiency of the administration and dispatch of the proceedings necessitates a common-sense interpretation ... of the statute in order that the right to appeal be limited within reasonable bounds." *Id.* The court concluded that the district court's order denying the appellant's motion to quash is not of the class of proceedings reviewable on appeal, notwithstanding the fact that it might affect some substantial right of the appellant. "[T]he order denying the motion to quash does not substantially determine any issue in the proceeding; and an interlocutory order which determines nothing is not appealable." *Id.* at 953. The court added that "where the granting or refusal of a motion in bankruptcy is within the discretion of the court, and there is no claim or showing of an abuse of discretion, the order should not be considered an appealable order entitled to an automatic stay of ten days." *Id.* at 954.

The court next considered whether the appellant was entitled to an automatic ten day stay from entry of the

order adjudging him guilty of contempt. *Id.* at 955. The court found the order appealable, but upon considering whether it was a 'judgment' entitling the appellant to an automatic stay, the court noted that "a proceeding for contempt of court is summary in form and swift in execution ... and its efficiency as a means of securing the unimpeded administration of the law depends upon its summary character." *Id.* at 956 (citations omitted). The court concluded that:

> There can be no question that a contempt order, directed to making a witness answer questions, is not such an appealable order, under the Federal Rules of Civil Procedure, as is entitled to an automatic stay of proceedings until the expiration of ten days after its entry. The reason for this conclusion is that contempt proceedings are in a class by themselves.

*Id.* Accordingly, the Court of Appeals found that the district court was not in error when it enforced the contempt order without waiting for the ten day period to expire. *Id.* at 957.[11]

In contrast, the United States Bankruptcy Court for the District of Columbia had this to say in *In re Professional Air Traffic Controllers Org.*, 18 B.R. 894 (1982), an opinion issued in response to a motion for summary judgment in which the plaintiff registered three separate judgments in the United States District Court predicated on the assessment of 4.5 million dollars in fines.[12] The court issued writs of attachment, and these were served within ten days of the

---

**11.** *Patterson v. Lumbard,* 16 F.R.D. 140, 140–41 (S.D.N.Y.) (1954), followed the principles set forth in *Manufacturers Trading, supra.* The case involved a civil contempt proceeding in which the relator refused to comply with the court's direction to produce books and records, was detained by court order, and sought release upon a writ of habeas corpus. The petitioner argued that Federal Rule 62(a) entitled him to an automatic ten day stay of execution, but the court dismissed the writ on the ground that if enforced, the automatic stay would strip contempt proceedings of their efficacy.

**12.** These fines were entered by the United States District Court for the Eastern District of New York.

original entry of judgments. *Id.* at 896. In addressing whether the plaintiffs were entitled to secure the writs of attachment within the ten day period, the court concluded that "because the money judgments in this case are not different than any other money judgment, the registration of the judgments and the writs of attachment must be quashed." *Id.* at 897. The court distinguished the instant case from *Manufacturers* and *Patterson* because, *inter alia,* those cases involved "a prospective court order directing a party to perform a specified act." *Id.* at 898. It contrasted the judgment in the case before it as a contempt judgment for a "violation of a long standing injunction." *Id.* It concluded that "the primary concern of the *Manufacturers* court was not that all orders of contempt be excluded from the provisions of FRCP 62(a), but only that Rule 62(a) procedures not destroy the very essence of contempt proceedings." *Id.* at 899. Ultimately, the court concluded that the writs of attachment were improperly registered during the stay period.

We reiterate that the underlying theme of these cases suggests that if an appeal is available, the automatic stay remains effective unless it would undermine some important judicial consideration, such as the court's contempt powers. The Maryland rule's language supports this interpretation by providing two exceptions to the automatic stay, one for granting injunctions, and the other for appointing receivers. *See* Md.R. 2–632(b) (order granting injunction or appointing receiver is not automatically stayed unless court so orders). Each exception concerns action taken pending further judicial determination, and each is an important tool among those available to lower courts, somewhat akin to a court's contempt powers.

In the instant case, the judgment of divorce and monetary award were appealable. Moreover, the *ex parte* order did not fall under either of the rule's expressed exceptions, nor does it further some important judicial interest such as a court's contempt power or its power to grant injunctions

**374**

and appoint receivers. We therefore conclude that the court's *ex parte* suspension of the stay was impermissible.

## GARNISHMENT

The law firm also argues that the court erred in declaring null and void the firm's garnishments to the banks and in dismissing its garnishment against Bennett. We briefly reiterate the relevant facts in the interest of clarity.

In 1989, Lee signed confessed judgment promissory notes in the law firm's favor in the amounts of $20,000[13] and $55,000,[14] and the law firm reduced these to judgments on January 27, 1989 and May 24, 1990, respectively. On January 18 of the following year, the law firm obtained writs of garnishment[15] to be served upon Tyson Bennett, trustee of the funds held for Lee's and Helen's benefits, and the banks wherein those funds were deposited. The private process server's affidavit indicated she served Bennett by delivering to his secretary a copy of the writ of garnishment.

The garnishees responded to the garnishments, as per Maryland Rule 2–645(e)'s requirements.[16] Bennett's February 15, 1991 response indicated that his office received the firm's requests for writ of garnishment, but that he was not personally served. He admitted that he holds funds in trust

---

**13.** The law firm's Complaint and Affidavit for Confessed Judgment indicated that Lee owed it $20,000 "for services rendered and to be rendered."

**14.** The confessed judgment promissory note for $55,000 does not indicate why Lee owed so much money to the law firm.

**15.** The writs of garnishment were for the amount owed under the notes, plus interest, plus court costs.

**16.** The garnishee shall file an answer within the time provided by Rule 2–321. The answer shall admit or deny that the garnishee is indebted to the judgment debtor or has possession of property of the judgment debtor and shall specify the amount and nature of any debt and describe any property. The garnishee may assert any defense that the garnishee may have to the garnishment, as well as any defense that the judgment debtor could assert.

for Lee and for Helen, pursuant to the court's order, and asked the court to determine the proper disposition of those funds. Augusta Federal Savings Bank (Augusta) admitted service of the writs, and neither admitted nor denied that it holds funds subject to garnishment, but asked the court to direct the disposition of the funds it holds in an account titled in Bennett's name as trustee for the Gerholds.[17] Farmers National Bank denied that it was indebted to Lee. Annapolis Bank and Trust Company's answer admitted service of the writs and indicated that it was not indebted to Lee, but that it had issued a CD to Bennett as trustee for Lee and Helen.

A few words concerning the nature of garnishment proceedings are appropriate here. In *Fico, Inc. v. Ghingher*, 287 Md. 150, 411 A.2d 430 (1980), the Court of Appeals explained that:

> [a] garnishment proceeding is, in essence, an action by the judgment debtor for the benefit of the judgment creditor which is brought against a third party, the garnishee, who holds the assets of the judgment debtor. An attaching judgment creditor is subrogated to the rights of the judgment debtor and can recover only by the same right and to the same extent the judgment debtor might recover. The judgment itself is conclusive proof of the judgment debtor's obligation to the judgment creditor. The sole purpose of the garnishment proceeding therefore is to determine whether the garnishee has any funds, property or credits which belong to the judgment debtor.

*Id.* at 159, 411 A.2d 430 (citations omitted).

### a. The Banks

The court held null and void all garnishments directed to

---

17. The Resolution Trust Corporation was appointed the Receiver for Augusta Federal Savings Bank and it is now the proper party defendant.

the banks.[18]  Although it did not elaborate upon its reasons, we find that the court did not err in so ordering.

A bank and its customers enjoy a debtor/creditor relationship in which the rights and liabilities of each are contractual.  *See Suburban Trust Co. v. Waller*, 44 Md. App. 335, 339–40, 408 A.2d 758 (1979) (collecting Maryland appellate decisions that follow this view).  This debtor/creditor relationship persists even if the depositor is a trustee. *See Corbett v. Hospelhorn*, 172 Md. 257, 273–75, 191 A. 691 (1937) (bank acting as trustee may deposit funds in itself, thereby creating both a fiduciary relationship (as trustee) and a depositor/creditor relationship).

With respect to bank deposits, the Court of Appeals has stated that:

> [m]any decisions of the Court have established that in essence and effect garnishment is a suit by the debtor against the garnishee for the use and benefit of the attaching creditor and, therefore, the holdings have been that the rights of the creditor vis a vis the garnishee cannot rise above those of the debtor.  The liability of the garnishee to the attaching creditor in respect of property or credits in his hands is determined ordinarily by what his accountability to the debtor would be if the debtor were in fact suing him.

*Messall v. Suburban Trust*, 244 Md. 502, 506, 224 A.2d 419 (1965).  *See also Bendix Radio Corp. v. Hoy*, 207 Md. 225, 229, 114 A.2d 45 (1954) ("plaintiff can recover from the garnishee only by the same rights and to the same extent as the debtor could recover if he were suing the garnishee"). In *Wanex v. Provident State Bank*, 53 Md.App. 409, 413, 454 A.2d 381 (1983), we said:

---

**18.**  "Any and all Writs of Garnishment served upon Maryland National Bank, Farmer's National Bank, Annapolis Banking and Trust, and Augusta Federal Savings Bank, whether issued in the above captioned case or in Case Nos. 1122312 and 1118808 be and hereby are declared to be null and void and of no force or effect whatsoever."  Order, *Gerhold v. Gerhold*, Circuit Court for Anne Arundel County No. 3217844, filed: Feb. 21, 1991.

Funds of defendant on deposit in a bank are subject to garnishment in the absence of special circumstances creating an exemption. However, the garnishing creditor can reach funds of the depositor only in cases where the depositor is the true owner thereof.

For the purposes of garnishment a bank deposit *prima facie* belongs to the person in whose name it stands, the general test being whether, but for the garnishment, the deposit would be subject to defendant's check, or whether defendant could sue the bank therefor in debt or assumpsit. . . .

(quoting 38 C.J.S. *Garnishment* § 80 (1943)).

■ The banks' contractual obligations are to P. Tyson Bennett, Trustee for Helen Louise Gerhold and Lee D. Gerhold, and not to Lee. Lee has no contractual relationship with the banks, he cannot sue the banks to obtain the funds, and they are not subject to his check. He therefore is not entitled to garnish the accounts. Lee is the judgment debtor in the case at bar, and because he has no right of action on the accounts, the law firm likewise has no right of action against the banks. The trial court appropriately declared null and void the law firm's garnishments against the banks.

### b. The Trustee

■ Neither did the court err in dismissing the law firm's writs of garnishment against Bennett. Helen served upon Bennett a writ that exceeded the funds he held in trust, and the law firm would have been unable to proceed against the trust accounts for the reason that there no longer was anything to proceed against.

Maryland law on the issue of priority is clear: "when attachments on more than one judgment are laid in the hands of a garnishee they acquire priority based on the order in which the writs are served on the garnishee." *Northwestern Nat'l Ins. Co. v. Wetherall,* 267 Md. 378, 387, 298 A.2d 1 (1972).

Helen's writs of garnishment had priority over those of the law firm. As noted earlier, Helen sought and obtained an additional writ of attachment which was served on Bennett on January 28. The law firm obtained its writ of attachment on January 18 but the law firm's writ of garnishment against Bennett was defectively served. A garnishee must be personally served, as per Maryland Rule 2–645(d); [19] unless the garnishee is personally served, the court has no jurisdiction over the proceedings. *See Cole v. Randall Park Holding Co.*, 201 Md. 616, 623, 95 A.2d 273 (1952) ("garnishment is the exercise of a special and limited statutory power, the requisite[ ] of which [is] jurisdictional"); *Guen v. Guen*, 38 Md.App. 578, 585, 381 A.2d 721 (1978) ("Court of Appeals has often held that defective service is jurisdictional, and that actual knowledge on the part of the defendant will not cure the jurisdictional defect"); *Sheehy v. Sheehy*, 250 Md. 181, 184–85, 242 A.2d 153 (1968) ("[i]f the defendant was not properly served the court below had no jurisdiction.... To have been valid the service must have been personal and the fact that the defendant may have had actual knowledge of the suit against him would not cure a defective service.").

The law firm served its writ against Bennett upon Bennett's secretary, and the evidence indicates that Bennett did not authorize her to accept service on his behalf. Additionally, the circumstances do not warrant a finding of implied agency: the secretary told the person serving the writ that she was unsure whether she in fact had the authority to accept service on Bennett's behalf. Helen's January 28th writ prevails.

In light of the foregoing, the lower court correctly dismissed the law firm's writs of garnishment against the

---

**19.** "The writ shall be served on the garnishee in the manner provided by Chapter 100 of this Title for service of process to obtain personal jurisdiction...." Md.R. 2–645(d). *See also* Md.R. 2–124(a) ("Service is made upon an individual by serving the individual or an agent authorized by appointment or by law to receive service of process for the individual.").

banks and against Bennett. Accordingly, it did not err in denying the law firm's motions to release Lee's interest in the trust account from Helen's garnishments with respect to the garnishment arising from her successful tort action.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.