630 A.2d 256

**FIRST VIRGINIA BANK–CENTRAL MARYLAND**

v.

**SCHUMACHER & SEILER, INC.**

**No. 1948, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

Sept. 8, 1993.

**434**

Kathleen T. Barlow, Falls Church, VA, argued for appellant.

Andrew M. Croll, argued (Robert Allen Sapero, Alan R. Engel and Sapero & Sapero, on the brief), Baltimore, for appellee.

Argued before WILNER, C.J., and ALPERT, J., and MILLER, WILLIAM C. MILLER, J. (Specially Assigned).

ALPERT, Judge.

This case concerns the distinction between Maryland Rules 2–632 (Automatic stay of enforcement of a judgment) and 8–422 (Stay of enforcement of judgment from which an appeal is taken).[1] In this "Expedited Appeal," pursuant to Rules 8–207(b) and 8–413(b), the parties—(1) First Virginia Bank–Central Maryland, garnishee and appellant (hereinafter, "FVB"), and (2) Schumacher & Seiler, Inc., judgment creditor and appellee (hereinafter, "S & S")—filed an agreed Statement of the Case and Facts, which will be summarized below.

---

1. Unless otherwise stated, all citations to rules are to the Maryland Rules.

On November 28, 1990, the Circuit Court for Harford County entered an Order granting judgment by default in favor of S & S, and against Fallston Plumbing, Inc. (hereinafter, "Fallston") in the amount of $34,729.53, plus attorney's fees of $13,150.05 and court costs. On December 13, 1990, S & S requested a writ of garnishment which was issued and served on FVB the following day.[2]

Subsequently, on January 16, 1991, FVB filed a Plea of Garnishee (1) confessing possession of Fallston's funds in the amount of $1,209.56, and (2) requesting that the Court instruct FVB as to whether FVB should release said funds or whether it should distribute them to the plaintiff, S & S. That same day, Fallston filed a Motion to Exempt Property from Execution requesting that $1,282.81 of the amount it held at FVB be exempted from execution. On January 23, 1991, S & S filed a response to said Motion alleging that the claimed exemption was only available to individuals. FVB filed no reply.

On June 17, 1991, a hearing was held in the Circuit Court for Harford County regarding the Motion to Exempt Property from Execution. S & S asserted that Fallston was not entitled to the claimed exemption. The circuit court entered an Order for Release of Property in favor of Fallston, ordering the release from garnishment of $1,282.81 of Fallston's funds. On June 20, 1991, at FVB's request, counsel for S & S sent to the Bank a copy of its Notice of Appeal evidencing its intent to appeal the Order for Release of Property. One day later (*i.e.,* June 21, 1991), FVB, by letter of the same date, informed the court, Fallston, and S & S that it had complied with the Order for Release of Property by crediting Fallston's bank account in the amount of $1,282.21.

On June 25, 1991, S & S timely filed a Notice of Appeal from the Order, but failed to file either a supersedeas bond or a motion to stay enforcement of the order. On May 5, 1992,

---

**2.** At some point following the order of default judgment and before the issuance of the writ of garnishment, First Virginia Bank became The Commercial Bank. For ease of discussion, we will continue to refer to the bank as FVB.

this Court, in a reported opinion [3], reversed the circuit court's Order for Release of Property. Later, on July 20, 1992, S & S filed with the circuit court a Request for Entry of Judgment–Garnishment against the Bank in the amount of $1,209.56. On or about August 4, 1992, FVB filed a response in which it argued that FVB had released the funds because it had not been notified of the filing of either a supersedeas bond or a motion for stay of execution of the Order for Release of Property.

On October 19, 1992, a hearing was held before Judge Stephen M. Waldron in the Circuit Court for Harford County on S & S's Request for Entry of Judgment–Garnishment. S & S argued that there was no reason to file a supersedeas bond prior to June 27, 1991, because enforcement of the Order for Release of Property was automatically stayed for 10 days pursuant to Rule 2–632(b); and there was no reason to file a bond after June 27, 1992, because FVB had already released the funds by that date. FVB countered with the argument that, despite notification that a Notice of Appeal would be filed, FVB was entitled to release the funds in order to comply with the court's Order because S & S had neither moved for a stay of execution nor filed a supersedeas bond. At the conclusion of the hearing, Judge Waldron granted a judgment of garnishment in favor of S & S, and against FVB, in the amount of $1,209.56. On October 29, 1992, FVB timely filed an appeal from that judgment and asks [4]:

> Whether the defendant garnishee bank was entitled to release garnished funds pursuant to the trial court's order for release of property, pending a notice of appeal filed by the plaintiff judgment creditor.

We answer the above question in the negative and, therefore, affirm the decision of the trial court.

---

**3.** *See Schumacher & Seiler, Inc. v. Fallston Plumbing, Inc.,* 91 Md.App. 696, 605 A.2d 956 (1992).

**4.** On November 10, 1992, S & S filed a Request for Writ of Execution by Levy with regard to property of FVB which was stayed when, on November 16, 1992, FVB filed a supersedeas bond.

## DISCUSSION

■ The crux of the instant case is whether the voluntary compliance (prior to the expiration of the automatic 10–day stay period provided by Maryland Rule 2–632(b)) by the garnishee bank (FVB) with a court order, *mandating the release of garnished funds* imposes an obligation on the part of the judgment creditor (S & S) to post a supersedeas bond (otherwise not required within the 10–day post judgment period) in order to preserve its rights with regard to those funds. S & S argues that, because pursuant to Rule 2–632(b), enforcement of the June 17, 1991 Order was stayed until June 27, 1991, and FVB released the garnished funds on June 21, 1991 (prior to the expiration of the 10–day stay period), the posting of a supersedeas bond during the 10–day post-judgment period would have been unnecessarily duplicative.

We agree and explain.

The effect of a supersedeas bond with respect to the stay of enforcement of a judgment (as S & S accurately asserted at the lower court hearing) is "to stay execution or suspend the operation of the decree or order *appealed from.*" *Cook v. Boehl,* 188 Md. 581, 592, 53 A.2d 555 (1947) (Emphasis added). Indeed, Rule 8–422(a) provides:

> *Except as otherwise provided in the Code or Rule 2–632,* an appellant may stay the enforcement of a civil judgment ... *from which an appeal is taken* by filing a supersedeas bond under Rule 8–423....

(Emphasis added). Rule 2–632(b), on the other hand, states:

> Except as otherwise provided in this Rule, enforcement of a judgment is *automatically stayed* until the expiration of ten days after its entry.

(Emphasis added).

The distinction between these two rules is clear. Rule 8–422(a) dictates what is required for a stay of the enforcement of a judgment *which has been appealed,* while 2–632(b) provides for an *automatic stay* for ten days following the entry of judgment (without regard to whether or not such judgment

was appealed). Rule 2–632(b) is derived from Fed.R.Civ.P. 62(a) which provides that

> no execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of 10 days after its entry.

The 10–day stay period is meant to correspond to the 10–day window afforded by Rules 2–532, 2–533, and 2–534, for filing motions (1) for judgment notwithstanding the verdict; (2) for new trial; (3) to alter or amend a judgment; and (4) to revise a judgment, respectively. *See Gordon v. Gerhold,* 90 Md.App. 360, 368, 600 A.2d 1194 (1992).

FVB would have us hold that, because S & S filed a notice of an intention to appeal *within the first ten days following the date of the judgment,* Rule 8–422(a) (governing the procedures to be followed in requesting a stay of a judgment *from which an appeal is taken*) overrides the *automatic* 10–day stay provided by Rule 2–632(b). Indeed, in its brief, FVB asserts the following:

> The purpose of the automatic ten day stay is to allow the parties to think about their strategy. If the party's strategy is to appeal, then that appellant must take whatever steps are necessary in order to protect its interests.

Appellant's Brief at 3.

FVB further contends that in order for S & S to have prevented enforcement of the June 17 Order, it would have had to have taken one of the two following procedural safeguards: (1) moved the trial court for a stay of execution or, in the alternative, (2) filed a supersedeas bond. FVB asserts that, because S & S failed to take either one of these two actions within the 10–day post judgment period, (and instead merely "notified FVB of its intention to file a notice of appeal of the trial court's order"), S & S must bear the consequences of failing to stay execution of the order to release the funds in Fallston's account.

■ Essentially, FVB contends that if the notice of an intention to file an appeal is filed within the 10 days following the date of judgment, the *automatic* 10 day protection is lost

and any procedure required by Rule 8–422 (*e.g.,* filing a bond) must be complied with. FVB advocates, therefore, that, in failing either to move for a stay of execution of the order or to file a supersedeas bond, S & S relied to its detriment on its belief (whether reasonable or not) that FVB was going to release the funds to Fallston within the 10–day post-order period.

There is some merit to a part of FVB's argument but none as to its suggested conclusion.

Rule 2–632(b) explicitly states that "Except as otherwise provided in this Rule, enforcement of a judgment is automatically stayed until the expiration of ten days after its entry." *Id.* There is no room for interpretation regarding the consequences resulting from the filing of an appeal during that 10–day period. The plain meaning of the Rule suggests that the enforcement of a judgment is *automatically* stayed for the first ten days following the date of judgment. Whether the creditor *intends* to file, provides *notice* of an intent to file, or *actually* files, an appeal within the 10–day post judgment period, the garnishee is precluded from releasing garnished funds prematurely.

The filing of an appeal during the 10–day automatic stay period cuts off the remainder of the stay period following the date of appeal. The reason for this lies in the very purpose of the automatic stay, which is to allow the opposing party an opportunity to file any of several post-trial motions available under the trial rules. *Gordon,* 90 Md.App. at 368, 600 A.2d 1194. The ten-day time period correlates with the time allowed for filing said motions. *Id.* Once an appeal is filed, however, the need for additional time to ponder post-judgment strategy is obviated. In such a case, a supersedeas bond would then be required "to indemnify the appellee [herein, Fallston] against all loss or injury which [it] may sustain by reason of the appeal and the stay of the execution or the operation of such decree or order." *Cook,* 188 Md. at 592, 53 A.2d 555. When, as in the instant case, however, the gar-

nished funds have already been released by the time the appeal was filed, the filing of a bond would be unnecessary.

In *Fico, Inc. v. Ghingher,* 287 Md. 150, 411 A.2d 430 (1980), the Court of Appeals described the nature and purpose of a garnishment proceeding:

> [It] is, in essence, an action by the judgment debtor for the benefit of the judgment creditor which is brought against a third party, the garnishee, who holds the assets of the judgment debtor. An attaching judgment creditor is subrogated to the rights of the judgment debtor and can recover only by the same right and to the same extent that the judgment debtor might recover. The judgment itself is conclusive proof of the judgment debtor's obligation to the judgment creditor. The sole purpose of the garnishment proceeding therefore is to determine whether the garnishee has any funds, property or credits which belong to the judgment debtor.

*Id.* at 159, 411 A.2d 430 (citations omitted).

Having explained the mechanics of a garnishment proceeding, we must also consider both the rights acquired by the judgment creditor and the duties owed by the garnishee with respect to a writ of attachment in a garnishment proceeding. We again turn to *Fico, Inc.* for guidance:

> After [an] attachment is served, it is the garnishee's duty to hold the attached assets until the entry of a judgment in the garnishment action. Thus, *until judgment of condemnation absolute, the attachment serves the useful function of preventing the garnishee from prematurely disposing of any of the judgment debtor's assets.*

*Fico, Inc.,* 287 Md. at 162, 411 A.2d 430 (Emphasis added; citations omitted). If, however, the garnishee allowed the judgment debtor's assets, over which it maintained complete control, to be withdrawn from its possession, a judgment *in personam* may then be awarded against the garnishee for the value of the property attached. *International Bedding Co. v. Terminal Warehouse Co.,* 146 Md. 479, 492, 126 A. 902 (1924).

■ **441**

■ FVB is concerned that if we hold that a losing party is not required to either move for a stay of enforcement or file a supersedeas bond when it seeks to appeal an adverse order, then notwithstanding the unenforceability of the order for 10 days, the garnishee would be required to continue holding the garnished funds indefinitely, beyond the 10–day stay period. Again, FVB's concern is meritless. Our holding herein simply states the following: the enforceability of a judgment is automatically stayed for 10 days (or sooner if the appeal is filed sooner than 10 days) following the date of the judgment. Upon noting an appeal, a party, however, may stay the enforcement of a judgment only by filing (1) a supersedeas bond as provided in Rule 8–423, (2) alternative security (pursuant to Rule 1–402(e)), or (3) other security as provided in Rule 8–424. *See* Rule 8–422.

In summary, FVB erred by prematurely releasing the garnished funds to Fallston in face of the Rule 2–632 10–day automatic stay provision, and, furthermore that the lower court properly granted S & S's request for garnishment notwithstanding its failure to post a bond.[5] Therefore, we hold that the judgment of condemnation absolute in favor of S & S, and against FVB, was proper.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.

---

**5.** In this regard, FVB argues that, by virtue of the contractual relationship between a garnishee bank and its customer (a.k.a. the judgment debtor) (*i.e.,* that the garnishee bank may not deny its customer access to the use of its funds), the parties are entitled to rely on a court order releasing the garnished funds. FVB contends that, in the absence of a requirement that a judgment creditor move for a stay of execution or file a supersedeas bond when appealing an order to release garnished property, "a garnishee bank would be forced to deny its customer access to its funds, despite a final order in favor of the customer."