**REVENUE CABINET, Commonwealth of Kentucky, Appellant,**

v.

**TRIPLE R FOOD A RAMA (Robert & Evelyn Cobb), Appellees.**

**No. 93–CA–1155–MR.**

Court of Appeals of Kentucky.

July 22, 1994.

Discretionary Review Denied By Supreme Court Feb. 8, 1995.

Susan F. Stivers, Kenton L. Ball, Revenue Cabinet, Frankfort, for appellant.

John T. Aubrey, Manchester, for appellees.

Before EMBERTON, JOHNSON and MILLER, JJ.

MILLER, Judge:

Revenue Cabinet, Commonwealth of Kentucky (the Cabinet), brings this appeal from an Opinion and Order of the Leslie Circuit Court entered April 21, 1993, reversing and remanding a decision of the Kentucky Board of Tax Appeals. Ky.Rev.Stats. (KRS) 131.310 and .370. We reverse and remand to the circuit court with directions.

Robert and Evelyn Cobb, appellees (the Cobbs), are the owners of the Triple R Food A Rama retail grocery store located in Leslie County, Kentucky. They acquired the entire business (including the building and lot, equipment, and inventory) from Doyle and Anna Lee Couch (the Couches) by contract for sale dated February 15, 1988. The contract provided for a purchase price of $190,-000.00, with $40,000 upon delivery of the deed and the remaining balance payable in a series of mortgage installments. The contract made no reference to satisfaction of any probable tax liability.

The issue presented for our consideration is an interpretation of the "successor liability" provisions (KRS 139.670 and .680), of our Sales and Use Tax law. KRS Chapter 139.

KRS 139.670 provides as follows:

**Withholding amount of tax liability by purchaser of business.**—If any retailer *liable for any amount* under this chapter sells out his business or stock of goods, or otherwise quits business, his successors or assigns *shall withhold* sufficient of the purchase price to cover such amount until the former owner produces a receipt from the cabinet showing that it has been paid or a certificate stating that no amount is due. (Emphases added.)

KRS 139.680(1) provides as follows:

**Procedure in case of failure to withhold.**—(1) *If the purchaser of a business or stock of goods fails to withhold the purchase price as required, he becomes personally liable for the payment of the amount required to be withheld by him to the extent of the purchase price, valued in money.* Within sixty (60) days after receiving a written request from the purchaser for a certificate, or within sixty (60) days from the date the former owner's records are made available for audit, whichever period expires the later, but in any event not later than ninety (90) days after receiving the request, the cabinet shall either issue the certificate or mail notice to the purchaser at his address as it appears on the records of the cabinet of the amount that must be paid as a condition to issuing the certificate. (Emphasis added.)

■ In May 1989, the Cabinet conducted a Sales and Use Tax audit of the retail grocery

store for the periods from July 1, 1983, through December 1, 1988. On July 13, 1989, as a result of the audit, the Cobbs were issued a personal assessment for Sales and Use Taxes totalling $30,065.42 plus applicable interest. The assessment was issued against the Cobbs as "successor owners" pursuant to the foregoing sections.[1] The Cobbs refused to pay, claiming that under their interpretation of the law, the Cabinet is limited to collection remedies against the delinquent taxpayer(s). They buttress their argument upon the fact that since they did not pay the entire purchase price and still owe the Couches a sum much in excess of the tax liability, the Cabinet should use traditional methods of seizing the balance owed.[2] The Cobbs insist that by still owing for the property, they have, in effect, withheld payment of the purchase price sufficient to cover the delinquent taxes and, thus, have complied with the statutory scheme. They reason they are not consequently subject to personal assessment. On the other hand, the Cabinet contends that a purchaser of a business having a tax delinquency is protected only by withholding from the purchase price a sum sufficient to cover the tax deficiency until the seller produces either a receipt from the Cabinet showing that the taxes have been paid or a certificate therefrom stating that no amount is due. Absent this compliance, the Cabinet contends that the purchaser is subject to direct personal assessment for any deficient taxes. In sum, as was argued by the Cabinet, the scheme of the statutes is that when a business changes hands, the purchaser must assure that taxes are current or else risk becoming personally liable therefor. It is of no consequence that a sufficient balance remains owing on the purchase price which may be seized by the Cabinet in proceedings against the delinquent seller.

■ This is a case of first impression in this jurisdiction; however, there are several authorities from other states interpreting similar statutes. The authorities seem nearly uniform in holding that where a business with delinquent taxes is purchased absent compliance with the statutes, the purchaser may incur personal liability for the delinquency. The taxing authority need not exhaust collection remedies against a prior owner, nor proceed in a traditional sense against any balance owed to the seller. The purchasers may suffer direct assessment.[3]

The public interest in collecting taxes demands that tax liability follows the assets of a business. Therefore, a clear and proper interpretation of the successor liability taxing scheme is to impose personal liability upon any purchaser who has purchased the assets of a business in disregard of the statutory obligation. Generally, it is the purchaser who is in a better position to protect the state's interest in collecting delinquent taxes. See Knudsen Dairy Products Co. v. State Bd. of Equalization, 12 Cal.App.3d 47, 90 Cal.Rptr. 533 (1970). It seems not unreasonable that a purchaser who succeeds to ownership and possible liquidation of business assets first require the former owner to produce evidence of tax satisfaction in the form of a payment receipt or certificate of no taxes due from the Cabinet, or incur the risk of personal liability for any unpaid tax debt to the extent of the purchase price. The statutory scheme offers the simple solution of withholding a sufficient amount of the purchase price to cover the amount of unpaid taxes until it is assured that the tax obligations of the business has been settled. We think our analysis consistent with Missouri and Tennessee in interpreting their respective successor liability statutes. See Bates v. Director of Revenue, 691 S.W.2d 273 (Mo. banc. 1985) (stating the clear intention of the successor liability statute is that tax debt follows the assets of a business), and Bank of Commerce v. Woods, 585 S.W.2d 577 (Tenn. 1979) (holding the obligation for outstanding taxes under the successor liability statute is

---

1. Apparently, the assessment included delinquent taxes during the audit period when the establishment was owned by others. The Couches owned the grocery from September 1, 1986, through January 31, 1988. Before that, the business was owned by Jack Woods from July 1, 1983, through July 30, 1984.

2. This would, of course, require the Cabinet to proceed against the delinquent taxpayers and, perhaps, attach the balance owed.

3. In such event, it appears the purchasers' remedy, if any, is against the seller.

not lost because consideration for sale was commercial paper rather than cash).

For the foregoing reasons, the order of the circuit court is reversed, and this cause is remanded with directions to enter judgment affirming the decision of the Kentucky Board of Tax Appeals.

All concur.