BLUE, J.
 

 This tax appeal presents novel issues concerning the Connecticut law of successor tax liability. A hearing was held at which I heard the testimony of the president of Red, White and Blue Transmission, Inc. (RWB), the plaintiff in this case, and two officers of the department of revenue services (DRS). A number of documentary exhibits were also received into evidence. The following facts are found.
 

 This case involves the sale of an AAMCO transmission repair business in West Haven. The owner of the business was Salem Enterprise Corp. (Salem). On April 29, 1991, Daniel M. Albizu, the president of RWB, and Salem signed a contract in which Albizu agreed to purchase the assets of the business for $50,000. RWB was not mentioned in the contract, but as will be seen it was RWB that ultimately purchased the assets in question. (The franchise itself was purchased from AAMCO in a separate transaction.) The closing was originally scheduled to occur on or before June 1, 1991, but the parties were unable to close at any time during the calendar year 1991. The basic problem was that the existing encumbrances on the business (including substantial DRS hens) greatly exceeded the purchase price.
 

 On December 2, 1991, AAMCO gave RWB an ultimatum. RWB had to close within sixty days or lose its franchise. This ultimatum made RWB anxious to close. Whether for this or some other reason, it cut an important comer. It ignored the procedure set forth in General Statutes § 12-424 concerning successor tax liability. That procedure, as will be explained more fully below, requires a purchaser of a business or stock of goods to withhold a sufficient amount of the purchase
 
 *365
 
 price to cover the seller’s sales and use tax liability until the seller produces a receipt from the DRS showing that the tax has been paid. This was not done.
 

 Rather than conform to the statute, RWB decided to follow the strategy, if it can be called that, of informing the DRS of what it perceived to be its plight — too many encumbrances, not enough assets, and an incipient deadline — and “assuming” that the DRS would act “reasonably.” The outcome of this strategy can be readily imagined.
 

 RWB’s counsel initially wrote to the DRS on December 18, 1991. That letter suggested that the DRS foreclose on any tax lien and indicated that RWB would purchase the property at auction. On January 3, 1992, RWB’s counsel wrote a second letter to the DRS. This letter stated that Salem would sell its assets to RWB in a bulk sale transfer, that the proceeds — after payment of brokerage commissions and attorney’s fees — would be held in escrow, and that the creditors would then divide up the proceeds either by voluntary agreement or court order. On January 21, 1992, RWB’s counsel faxed a third letter to the DRS that essentially repeated the second proposal. The DRS did not respond to any of these letters.
 

 The closing occurred on January 22, 1991. RWB purchased the assets and goodwill of the business from Salem for $50,000. Salem and RWB signed an agreement denominating Salem’s attorney, Martin J. O’Neill, as “trustee for the benefit of creditors.”
 

 The evidence concerning the actual payment of the purchase price is somewhat confusing. It appears that RWB made the following payments: $10,000 to Salem in the form of a note. Salem subsequently assigned this note to O’Neill, trustee; $2500 to Salem’s broker; $24,000 to O’Neill, trustee; $11,000 to O’Neill, trustee, as a deposit (previously paid); $2500 in cash. No witness could recall how or to whom this last amount was paid.
 

 
 *366
 
 The DRS was not a participant in the closing and did not sign any of the closing documents. It subsequently found that, pursuant to § 12-424, RWB owes it $19,173.63, consisting of $10,721.17 tax, $1440.77 penalty and $5582.08 interest.
 
 [1]
 
 RWB has filed a timely appeal to this court.
 

 RWB raises three issues on appeal. It first contends that it has no liability under § 12-424 at all and that the DRS must content itself with its ratable share of the funds held by O’Neill. It next claims that, because it purchased Salem’s assets in a bulk sale, the DRS assessment is barred by General Statutes (Rev. to 1993) § 42a-6-110, a portion of the Uniform Commercial Code that limits certain actions involving bulk sales. It finally contends that the DRS is equitably estopped from pursuing its assessment by its failure to “cooperate” with RWB and Salem. These contentions will be discussed in turn.
 

 Section 12-424 provides as follows: “Payment on termination of business and successor’s liability. (1) Withholding by purchaser. If any retailer liable for any amount under this chapter sells out his business or stock of goods or quits the business, his successors or assigns shall withhold sufficient of the purchase price to cover such amount until the former owner produces a receipt from the commissioner showing that it has been paid or a certificate stating that no amount is due. (2) Liability of purchaser; release. If the purchaser of a business or stock of goods fails to withhold the purchase price as required, he becomes personally hable for the payment of the amount required to be withheld by him to the extent of the purchase price, valued in money. Within sixty days after receiving a written request from the purchaser for a certificate, the commissioner shall either issue the certificate or mail notice
 
 *367
 
 to the purchaser at his address as it appears on the records of the commissioner of the amount that must be paid as a condition of issuing the certificate. Failure of the commissioner to mail the notice shall release the purchaser from any further obligation to withhold the purchase price as above provided. The time within which the obligation of the successor may be enforced shall start to run at the time the retailer sells out his business or stock of goods or at the time that the assessment against the retailer becomes final, whichever event occurs later.”
 

 Although there are no Connecticut cases construing this statute, similar statutes have been enacted in many states, and a substantial body of relevant decisional law exists. See annot, 65 A.L.R.3d 1181 (1975). The case law on the subject has been summarized by the Supreme Court of Missouri as follows: “The courts of sister states consistently emphasize that the purpose of successor liability statutes is to secure collection of taxes by imposing derivative liability on purchasers of a business who are generally in a better financial position to collect or pay the tax from the sale price than the seller quitting the business. E.g.,
 
 Bank of Commerce
 
 v.
 
 Woods,
 
 585 S.W.2d 577 (Tenn. 1979). Such statutes are given broad construction so not to jeopardize the state interest in securing collection of taxes. [Id.], 581; see
 
 Sterling Title Company of Taos
 
 v.
 
 Commissioner of Revenue,
 
 85 N.M. 279, 511 P.2d 765 (App. 1973);
 
 Tri-Financial Corporation
 
 v.
 
 Department of Revenue,
 
 6 Wash. App. 637, 641, 495 P.2d 690, 692 (1972).”
 
 Bates
 
 v.
 
 Director of Revenue,
 
 691 S.W.2d 273, 276 (Mo. 1985).
 

 RWB concedes that, for purposes of § 12-424, the “purchase price” of Salem’s assets was $50,000 and that the sales and use tax liability in question, while substantial, is less than that amount. It makes two arguments concerning the applicability of the statute. It first
 
 *368
 
 contends that it complied with the statute by “withholding” an appropriate amount in the form of its payments to O’Neill. Because this “withholding” has been made, it argues, the DRS must now content itself by taking action against O’Neill, who now holds the funds that have been “withheld.” It next contends, more generally, that a strict application of the statute will be unfair in this context because such an application will endanger business deals such as the one made here and will result in the wasting of assets. Neither of these arguments is viable.
 

 RWB failed to comply with the plain language of the statute. Section 12-424 (1) requires a purchaser of business assets to “withhold sufficient of the purchase price to cover” the vendor’s sales and use tax liability. “Withhold” does not mean giving the money to a third party. Section 12-424 (2) makes this absolutely clear by providing that “[i]f the purchaser of a business or stock of goods fails to withhold the purchase price as required, he becomes personally hable for the payment of the amount required to be withheld
 
 by him.
 
 ” (Emphasis added.) If a purchaser gives the purchase money to anyone else, including a trustee, the money is not withheld “by him.” Moreover, giving the “withheld” money to a trustee or receiver defeats the basic purpose of the statute, “for it is the clear intention of successor liability statutes to provide that the tax debt follow the business, its assets or any portion of them.”
 
 Bates
 
 v.
 
 Director of Revenue,
 
 supra, 691 S.W.2d 277. To construe the statute to allow purchase money to be “withheld” by giving it to a third party “would permit a taxpayer to avoid liability by the simple device of having the purchase price paid through an intermediary. ”
 
 Knudsen Dairy Products Co.
 
 v.
 
 State Board of Equalization,
 
 12 Cal. App. 3d 47, 54, 90 Cal. Rptr. 533 (1970).
 

 RWB’s more general contention that the statute is unfair as applied is an argument that must be directed
 
 *369
 
 to the legislature rather than to this court. The requirements of the statute may be onerous in some cases, but they are nonetheless clear. “[T]he fairness of the . . . tax is within the prerogative of the legislature, and not of this court.”
 
 Yaeger v. Dubno,
 
 188 Conn. 206, 213, 449 A.2d 144 (1982).
 

 RWB’s second argument is that, because it purchased Salem’s assets in a bulk sale, the DRS is barred from pursuing its assessment by General Statutes (Rev. to 1993) § 42a-6-110, which provides in relevant part that “[n]o action under this article shall be brought nor levy made more than six months after the date on which the transferee took possession of the goods unless the transfer has been concealed.” This contention is defeated by the plain language of the statute relied upon. General Statutes (Rev. to 1993) § 42a-6-110 applies only to actions and levies “under this article.” The DRS has not brought an action under article six of the Uniform Commercial Code. It has made a tax assessment. “If a claim is asserted based upon rights available irrespective of Article 6, the limitation section will not apply.”
 
 Carpenter, Bennet & Morrissey
 
 v.
 
 Jones,
 
 197 N.J. Super. 475, 481, 485 A.2d 316 (1984). Because RWB purchased the assets of a business, thus subjecting itself to the provisions of § 12-424, the issue of whether it complied with the bulk transfer provisions of the Uniform Commercial Code is irrelevant.
 
 In re Carlton Southwest, Inc.,
 
 781 P.2d 1192, 1195 (Okla. App. 1989).
 

 RWB’s final argument is that the DRS is estopped from asserting its claim. This argument is unpersuasive. An essential element of estoppel is that “the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief . . . .”
 
 Zoning Commission
 
 v.
 
 Lescynski,
 
 188 Conn. 724, 731, 453 A.2d 1144 (1982); see
 
 JLM, Inc.
 
 v.
 
 Meehan,
 
 43 Conn. Sup. 135, 145-46, 649 A.2d 1 (1993). The DRS
 
 *370
 
 in this case neither did nor said anything calculated or intended to induce RWB to believe that any facts existed. It did not respond to RWB’s letters and was not a party to any of the closing documents. Consequently, estoppel is not appropriate here.
 

 At argument, RWB attempted to engraft two other arguments into its estoppel argument. It claimed that the DRS had a duty to mitigate its damages and, further, that § 12-424, as it has been construed, deprived it of property without due process of law. These arguments can be summarily dismissed. Mitigation of damages is a theory drawn from contract law. The DRS is not seeking damages in this case. It is seeking taxes pursuant to a statute. The statute in question is a reasonable exercise of the state’s taxing, and tax collecting, powers.
 
 Tri-Financial Corp.
 
 v.
 
 Dept. of Revenue,
 
 supra, 6 Wash. App. 642-43.
 

 Judgment shall enter for the defendant. The parties shall submit proposed orders within twenty days of the date on which this opinion is filed.
 

 [1]
 

 The numbers stated in the text do not add up to the total amount claimed by the DRS. The parties should be aware of this arithmetical mistake in preparing their proposed orders.