785 A.2d 767

**MR. PIZZA II, INC.**

v.

**COMPTROLLER OF the TREASURY.**

**No. 2875, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

Nov. 28, 2001.

Cynthia E. Young, Annapolis, for appellant.

Brian L. Oliner, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. on the brief), Baltimore, for appellee.

Argued before KENNEY, ADKINS and WILLIAM W. WENNER (Retired, specially assigned), JJ.

WILLIAM W. WENNER, Judge, Retired, specially assigned.

The genesis of this appeal is a judgment entered by the Circuit Court for Anne Arundel County affirming a decision of the Maryland Tax Court. Appellant, Mr. Pizza II, Inc. ("Mr. Pizza"), contends that because appellee, the Comptroller of the Treasury (the Comptroller), did not mail a notice of assessment within six months after receiving notice of a bulk sales transfer, the six-month limitations. period set forth in § 6–111 of the Commercial Law Article bars the Comptroller from imposing personal liability on Mr. Pizza. The Comptroller contends that § 6–111 does not apply when it is seeking to recover sales and use tax solely under the provisions of the Tax General Article of the Maryland Code.

The matter proceeded in the circuit court on the following stipulation of facts:

I.  On January 20, 1997 Pardner's, Inc. transferred all of its assets to Mr. Pizza II, Inc. as part of a "bulk transfer," as defined in Md.Code Ann. Commercial Law Article § 6–102.

II.  The bulk transfer of January 20, 1997 falls within the requirements of Md.Code Ann. Tax General Article § 11–505.

III.  Neither Petitioner nor Pardner's Inc. complied with the provisions of Md. Ann.Code Tax General Article § 11–505 and Md. Commercial Law Article §§ 6–107 and 6–108. No notice of the bulk transfer was ever sent to the Comptroller. .

IV.  The transferor, Pardner's Inc., of the January 20, 1997 bulk transfer owes sales and use tax to the Comptroller in the amount of $24,912.07 plus interest and penalty for the period April 1, 1992 thru January 31, 1997. This obligation remains outstanding and interest continues to accrue.

V. The Comptroller received information from a third party source that a bulk transfer had occurred on or about April 17, 1997.

VI. The Comptroller contacted the Petitioner's accountant on May 23, 1997 and informed that office of the outstanding tax liability of the transferor and that Petitioner could be held liable as a successor for Pardner's Inc.'s outstanding liability.

VII. On January 5, 1998, the Comptroller mailed to Petitioner, as successor to vendor, a Notice of Assessment for the outstanding sales and use tax liability, plus interest and penalty.

VIII The assessment was affirmed, with interest, and the penalty was abated by a decision of the Comptroller's Hearing Office on May 1, 1998.

Subsequent to the decision by the Comptroller's Hearing Office, Mr. Pizza noted an appeal to the Maryland Tax Court. The Tax Court, which is actually an administrative agency, affirmed the decision of the Comptroller's Hearing Office, that the limitations period contained in § 6–111 of the Bulk Transfer Act (BTA) was not applicable because the Comptroller did not bring an action or levy under the Commercial Law Article, but rather an assessment pursuant to the provisions of § 13–802 of the Tax General Article (TGA).

Mr. Pizza then appealed to the Circuit Court for Anne Arundel County, which, by an order of 3 January 2000, affirmed the Tax Court's decision. This appeal followed.

The sole issue before us is whether the six-month statute of limitations contained in § 6–101 of the Commercial Law Article (CLA) bars the Comptroller from imposing personal liability on Mr. Pizza. For the reasons hereinafter set forth, we shall affirm the judgment of the circuit court.

## Discussion

Section 6–101 of the Commercial Law Article (hereinafter referred to as the Bulk Transfer Act) governs bulk transfers. In appellant's view, as § 6–107 of the BTA designates the

Comptroller as a party to be notified of an impending Bulk Transfer, the Comptroller is subject to the six-month period of limitations set forth in § 6–111. We disagree. Since the Comptroller's imposition of liability on Mr. Pizza was neither an action nor a levy, § 6–111 does not apply. We shall explain.

TGA § 13–802 provides, in relevant part:

If the transferee ... in a bulk transfer fails to file the notice required in § 11–505 of this article or to retain consideration in an amount equal to the claim of the Comptroller for unpaid sales and use tax:

\* \* \*

(2) the transferee ... is personally liable for the sales and use tax, interest and penalties that the transferor owes to the State.

It is undisputed that neither of the transferors, Mr. Pizza and Pardner's, Inc., complied with the requirements of TGA's § 11–505, which provides, in relevant part:

(a) *Notice to creditors.*—A transferee or auctioneer in a bulk transfer, as defined in § 6–102 of the Commercial Law Article, shall mail to the Comptroller the notice to creditors, as required in §§ 6–107 and 6–108 of the Commercial Law Article, whether or not:

(1) the transferor lists the Comptroller as a creditor; or

(2) the transferee or auctioneer knows that the transferor owes any sales and use tax.

TGA § 11–401 provides: "[a] vendor is a trustee for the State and is liable for the collection of the sales and use tax for and on account of the State," and § 11–601(b) obligates a vendor to pay the use and sales tax collected by the vendor to the State. The Court of Appeals put it this way in *Rockower Brothers, Inc., et al. v. Comptroller of the Treasury,* 240 Md. 379, 392, 214 A.2d 581 (1965). These statutes "import an absolute obligation on a vendor to collect and pay over to the Comptroller the money collected from the purchaser if it is available or the proper amount of (the vendor's) own money if

it is not." When the sale of the assets of a business constitute a bulk transfer, TGA § 11–505 requires the purchaser to provide the Comptroller with notice of the transfer. Under TGA § 13–802, "If the transferee . . . fails to file notice required . . . (2) the transferee . . . is personally liable for the sales and use tax, interest and penalties that the transferor owes to the State."

"The sanction for noncompliance established by the Bulk Transfer Act is that the transfer is ineffective against the seller's creditors who may levy, attach or garnish the goods transferred to the buyer." See Md.Code Ann. Com. Law § 6–104 and § 6–105; *Fico, Inc. v. Ghingher, III*, 287 Md. 150, 157, 411 A.2d 430 (1980). Section 6–111 limits a creditor's ability to bring an action or levy to attack a bulk transfer after expiration of the six-month limitations period. *Johanna Farms, Inc. v. Elliott Equipment Company, Inc.*, 278 Md. 137, 149, 360 A.2d 436 (1976). Whether or not the parties to a bulk transfer have complied with the requirements of the BTA, the Comptroller, such as any other creditor, "may resort to any of the remedies otherwise provided by State law." *Fico*, 287 Md. at 158, 411 A.2d 430.

In reviewing the record before us, we learn that the Comptroller assessed Mr. Pizza for the sales and use tax, interest and penalties owed by Pardner's, Inc. to the State, according to the provisions of TGA § 13–802(2), rather than under the provisions of the BTA. We find no evidence whatever to suggest that the Comptroller sought to attack the bulk transfer of goods to Mr. Pizza by Pardner's, Inc. According to Mr. Pizza, any action taken against it by the Comptroller to recover sales and use taxes would necessarily be an action or levy against the property obtained by it in the bulk transfer, because "the effect of the Comptroller's actions will ultimately be to sell Mr. Pizza's assets if it does not voluntarily pay the tax. To the extent that those assets were acquired through the bulk transfer, those actions clearly fall within the purview of [§ ] 6–111 [of the Commercial Law Article]. . . ." This contention is of no avail to Mr. Pizza, for two reasons. First, there is nothing in the record to indicate that Mr. Pizza

intended to pay the taxes assessed by the Comptroller. Second, there is no legal support for Mr. Pizza's contention that the purchaser in a bulk transfer may choose to apply the BTA as a bar to a tax assessment simply by choosing to satisfy its personal tax liabilities by the sale of the assets acquired by it in the bulk transfer. TGA § 13–802 clearly makes the transferee personally liable for the sales and use tax, interest and penalties owed the State by the transferor, rather than limit liability to solely the property acquired by it during the bulk transfer.

We find no support for Mr. Pizza's contention that the BTA is applicable to the Comptroller's effort to collect the tax, interest and penalties that are due, or that the Comptroller's claim is barred by the six-month limitations period contained in BTA § 6–111. To the contrary, as we have said, the Comptroller is here pursuing the remedy provided by TGA § 13–802; it is not attacking the bulk transfer itself. The Comptroller is neither attempting to attach, levy nor garnish the property obtained by Mr. Pizza under the BTA. Thus, the Comptroller is not barred by the limitations period contained in BTA § 6–111. Compare *Red, White & Blue Transmission, Inc. v. Department of Revenue Services,* 44 Conn.Supp. 361, 690 A.2d 437 (1994) citing *Carpenter, Bennett & Morrissey v. Jones,* 197 N.J.Super. 475, 485 A.2d 316 (1984) [1] and *In re Carlton Southwest, Inc.,* 781 P.2d 1192 (Okla.App.1989).[2] Accordingly, we shall affirm the judgment of the circuit court.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

---

**1.** Section 6–103 specifically provides that the provisions of the BTA do not eliminate any rights or remedies that arise elsewhere unless they are "displaced" by particular provisions in Titles 1 through 10 of the CLA.

**2.** We find no merit in appellant's contention that the reasoning articulated in *Red, White and Blue Transmission* should be disregarded simply because the Connecticut legislature subsequently repealed the limitations section of Connecticut's Bulk Sales Act.