[No. C038101. Third Dist. Aug. 23, 2002.]

JOHN E. SCHNYDER et al., Plaintiffs and Appellants, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

COUNSEL

Clark & Nelson and David R. Nelson for Plaintiffs and Appellants.

Bill Lockyer, Attorney General, Timothy G. Laddish, Assistant Attorney General, Lawrence K. Keethe and Molly K. Mosley, Deputy Attorneys General, for Defendant and Respondent.

OPINION

DAVIS, J.—In this appeal, we interpret Revenue and Taxation Code sections 6811 (section 6811) and 6812 (section 6812) in the context of a bulk

sale. A bulk sale is a sale of most or all of a business's inventory and equipment. Sections 6811 and 6812 apply when a business that owes sales or use taxes is being sold. Section 6811 requires the buyer of the business or the business assets to withhold the amount of the taxes from the purchase price until the seller produces a receipt from the State Board of Equalization showing that the tax has been paid or a certificate stating that no amount is due. Section 6812 specifies that if the buyer fails to do this, the buyer becomes personally liable for the taxes to the extent of the purchase price. These statutes are known as successor liability statutes.

Using the bulk sales law (a procedure affording the creditors of a business that is being sold an opportunity to satisfy their claims before the business can transfer its assets), the buyers of the business here, John and Walter Schnyder (the Schnyders), through their escrow agent, filed an interpleader action with the purchase funds; the idea was to allow the business's multiple creditors, including the state sales and use tax agency, to resolve the amounts owed.[1] That tax agency, the State Board of Equalization (the Board), informed the Schnyders that the issue of successor liability was not involved in the interpleader action, determined that the Schnyders were personally liable as successors under section 6812, and levied on the Schnyders' bank account to pay the taxes owed.

The Schnyders sued the Board for a tax refund, contesting the determination of successorship. The trial court agreed with the Board, and awarded it summary judgment. We shall affirm the judgment.

## BACKGROUND

The relevant facts are undisputed. In the summer of 1998, the Schnyders contracted to buy the business assets of Arbuckle Food Center, Inc. (Arbuckle), a grocery business, for slightly over $50,000. One of the contractual provisions required the Schnyders to obtain tax clearance certificates from the Board regarding Arbuckle's sales and use tax liabilities.

The Schnyders proceeded under the bulk sales law,[2] and placed all of the approximately $50,000 in purchase funds into an escrow account. California's bulk sales law is found in division 6 of the Commercial Code; it is

---

[1]California Uniform Commercial Code (Commercial Code) section 6106.2, subdivision (e); Code of Civil Procedure section 386.

[2]Uniform Commercial Code—Bulk Sales (Cal. U. Com. Code, div. 6, § 6101 et seq. (the bulk sales law).

based on article 6 of the national Uniform Commercial Code.[3] The central purpose of the bulk sales law is to afford the creditors of a business that is being sold an opportunity to satisfy their claims before the business can transfer its assets and vanish with the sale proceeds.[4] The bulk sales law applies when a business sells more than half of its inventory and equipment in a sale that is not in the ordinary course of the business.[5] The law protects creditors by requiring that a specified advance notice of the sale be published and recorded, and that creditors be paid to the extent possible.[6] Purchasers in a bulk sale often conduct the sale through an escrow.[7] A buyer who fails to comply with the notice and creditor payment requirements of the bulk sales law is liable to a claimant for damages in the amount of the claim, reduced by any amount the claimant would not have realized if the buyer had complied.[8] To address creditor claims, a bulk sale buyer or its escrow agent may file an interpleader action with the purchase funds.[9]

In September 1998, the Schnyders' escrow agent wrote to the Board, informing it of the proposed sale and requesting a certificate of tax payment. In early November 1998, the Board responded with two letters. The first letter, termed a "withhold" letter, stated that the Board, to issue the requested certificate, required a cash deposit of the entire purchase price as security pending the closeout of Arbuckle's sales tax liability. The second letter warned the Schnyders that they could become liable for any unpaid sales and use taxes under the successor liability statutes if the Board did not issue a certificate of payment, and that compliance with the bulk sales law would not extinguish this liability.

By January 1999, the Schnyders' escrow agent had received multiple creditor claims against Arbuckle that exceeded the escrow amount, including claims from the Internal Revenue Service (IRS). Pursuant to the bulk sales

---

[3]See Commercial Code section 6101 and Official Comments on Uniform Commercial Code, 23B West's Annotated California Uniform Commercial Code (2002 ed.) following section 6101, pages 271-273; see 3 Witkin, Summary of California Law (2002 supp.) Sales, section 212, pages 52-53.

[4]*Monastra v. Konica Business Machines, U.S.A., Inc.* (1996) 43 Cal.App.4th 1628, 1642 [51 Cal.Rptr.2d 528] (*Monastra*); see 3 Witkin, Summary of California Law (9th ed. 1987) Sales, section 212, page 167.

[5]Commercial Code section 6102, subdivision (a)(3).

[6]Commercial Code sections 6104, 6105, 6106.2, 6106.4, 6107; see 3 Witkin, Summary of California Law, *supra,* Sales, section 212, page 167.

[7]Commercial Code section 6106.4, see also section 6106.2; see 3 Witkin, Summary of California Law, *supra,* Sales, section 219, page 171.

[8]Commercial Code sections 6104, 6105, 6106.2, 6107.

[9]Commercial Code section 6106.2, subdivision (e).

law, the escrow agent filed an interpleader complaint that named as defendants the IRS and the Board, among others.[10] The IRS removed the action to federal court.

In May 1999, the Board determined that the Schnyders were personally liable as successors for Arbuckle's unpaid sales and use tax liabilities, totaling approximately $30,000. In response, the Schnyders' escrow agent informed the Board's attorney that the pending interpleader action sought to resolve the Board's lien rights with respect to the Arbuckle sale. The Board's attorney responded in a letter that the "successorship issue as it relates to the Board . . . is not involved in the interpleader action. I would suggest that a Petition for Reconsideration [of the Board's successorship determination against the Schnyders] . . . be filed." The Schnyders never petitioned for reconsideration; the successorship determination became final in June 1999.

In July 1999, the parties resolved the interpleader action by stipulation. In the stipulation, the Board disclaimed any interest "it may have in the interpled funds."

The Schnyders never had Arbuckle produce a receipt from the Board showing the taxes were paid or a certificate stating that no amount was due. The Board levied on the Schnyders' bank account pursuant to its successorship determination. The Board seized approximately $30,000 to pay the tax owed.

The Schnyders sued the Board for a tax refund; they argued that the interpleader action resolved the sales tax issue regarding successor liability. The Board disagreed and moved for summary judgment; it contended the Schnyders were personally liable for the sales and use tax amount under sections 6811 and 6812. The trial court agreed with the Board and awarded it summary judgment. The Schnyders have appealed that judgment.

### DISCUSSION

The Schnyders contend (1) they withheld the purchase funds in compliance with section 6811 by depositing those funds initially in escrow and then in the interpleader action; (2) where multiple and conflicting creditor claims are raised, interpleader under the bulk sales law is the appropriate course of conduct; and (3) the Board is collaterally estopped from imposing successor liability on them given its stipulation in the interpleader action.

---

[10]Commercial Code section 6106.2, subdivision (e).

■ In this appeal we interpret the successor liability statutes against a set of undisputed facts. We are therefore presented with a question of law that we determine independently.[11] ■ Our objective in interpreting a statute is to determine legislative intent so as to effectuate the law's purpose.[12] The first thing we do is read the statute, and give the words their ordinary meanings unless special definitions are provided.[13] If the meaning of the words is clear, then the language controls; if not, we may use various interpretive aids.[14] ■ Here we find that the meaning of the pertinent words in sections 6811 and 6812 is clear and the language controls.

Section 6811 provides: "If any person liable for any amount under this part [which covers sales and use taxes] sells out his business or stock of goods or quits the business, his successors or assigns shall withhold sufficient of the purchase price to cover such amount until the former owner produces a receipt from the [B]oard showing that it has been paid or a certificate stating that no amount is due."

Section 6812 provides in relevant part:

"(a) If the purchaser of a business or stock of goods fails to withhold from the purchase price as required, he or she becomes personally liable for the payment of the amount required to be withheld by him or her to the extent of the purchase price, valued in money.

"(b)(1) Within 60 days after the latest of [specified] dates . . . , the [B]oard shall either issue the certificate or mail notice[] to the purchaser . . . of the amount that must be paid as a condition of issuing the certificate. [¶] . . . [¶]

"(c) Failure of the [B]oard to mail the notice referred to in subdivision (b) will release the purchaser from any further obligation to withhold from the purchase price as above provided. . . ."

■ The purpose of sections 6811 and 6812 was enunciated nearly 60 years ago by this court in *People v. Buckles*, which construed the substantively similar forerunner to these sections: "It is quite clear to us that

---

[11]*Viking Ins. Co. v. State Farm Mut. Auto. Ins. Co.* (1993) 17 Cal.App.4th 540, 546 [21 Cal.Rptr.2d 590].

[12]*Professional Engineers v. Wilson* (1998) 61 Cal.App.4th 1013, 1019 [72 Cal.Rptr.2d 111] (*Wilson*).

[13]*Wilson, supra,* 61 Cal.App.4th at pages 1019-1020.

[14]*Wilson, supra,* 61 Cal.App.4th at page 1020.

it was the intention of the Legislature in enacting [the successor liability statute] to prevent a retailer who has failed to pay the state all of the tax due under the [sales tax] act from selling his business and departing with the purchase price, by requiring that the purchaser, before paying over the purchase price, take the precaution of demanding either the receipt of the Board of Equalization that the tax has been paid in full or its certificate that no tax is due, and by imposing upon any purchaser who failed to protect himself and the state in this simple manner a statutory liability to pay the amount due to the state up to the amount of the purchase price."[15]

We grant the Board's request to take judicial notice of certain out-of-state decisional and statutory law on the subject of successor liability.[16] This authority confirms that successor liability statutes substantively identical to those in California abound across the country. The purpose of these statutes is generally recognized as ensuring the collection of state sales taxes by imposing liability upon the purchasing entity. They recognize that the purchaser ordinarily is in a financially better position to collect the tax than the selling entity, which is quitting the business.[17] These successor liability statutes envision the tax debt following the business, its assets or any portion of them.[18]

Against this backdrop, we now turn to the Schnyders' three issues.

### 1. *Section 6811 Withholding*

 The Schnyders maintain they "withheld" the purchase funds as required by section 6811 by initially depositing those funds with the escrow agent and then interpleading them. The Schnyders contend, therefore, that they cannot be held personally liable under section 6812 for failing to "withhold . . . as required." The Schnyders are mistaken.

---

[15]*People v. Buckles* (1943) 57 Cal.App.2d 76, 79 [134 P.2d 8] (*Buckles*); accord, *Knudsen Dairy Products Co. v. State Bd. of Equalization* (1970) 12 Cal.App.3d 47, 53 [90 Cal.Rptr. 533] (*Knudsen*).

[16]Evidence Code sections 452, 459.

[17]See e.g., *Bank of Commerce v. Woods* (Tenn. 1979) 585 S.W.2d 577, 580 (*Bank of Commerce*); *Red, White & Blue Transmission, Inc. v. Department of Revenue Services* (1994) 44 Conn.Supp. 361 [690 A.2d 437, 439] (*Red, White & Blue*); *Revenue Cabinet v. Triple R Food A Rama* (Ky.Ct.App. 1994) 890 S.W.2d 638, 639-640 (*Revenue Cabinet*).

[18]*Bank of Commerce, supra*, 585 S.W.2d at page 580; *Revenue Cabinet, supra*, 890 S.W.2d at page 640.

■ The court in *Knudsen Dairy Products Co. v. State Bd. of Equalization* defined the term "withhold" in section 6811.[19] The term "does not necessarily mean having physical assets in hand but simply means dealing with the purchase consideration in such a manner as to deny to the seller the benefit of the purchase consideration and to thereby make a portion of it available for the satisfaction of the tax liability."[20]

■ In two respects, the Schnyders failed to "withhold" the purchase funds as required by section 6811 and *Knudsen*. First, their interpleader action included a claim from a creditor superior to the Board (the IRS) that exceeded the purchase amount interpleaded.[21] Through their interpleader action, then, the Schnyders did not make the purchase funds "available for the satisfaction of the [sales and use] tax liability" owing to the Board, as required under *Knudsen*'s definition of the section 6811 term "withhold."

Second, the Schnyders failed to comply with a companion requirement specified in section 6811. That requirement is that the withholding of the purchase price must continue "until the [seller of the business or business assets] produces a receipt from the [B]oard showing that [the tax] has been paid or a certificate stating that no amount is due."[22]

*Knudsen* did not deal substantively with this companion requirement.[23] But *Buckles* did, characterizing it as "both simple and salutary."[24] As *Buckles* noted, if a purchaser fails to protect "the state or himself by demanding such receipt or certificate, he has no just cause to complain if it is thereafter determined by the [B]oard that the seller has failed to pay the sales tax due to the state and his statutory liability as purchaser is enforced."[25] The Schnyders never had Arbuckle produce a receipt from the Board showing that the taxes had been paid or a certificate stating that no amount was due. In short, the Schnyders failed to comply with the plain language of section 6811. Therefore, they are personally liable under the plain language of section 6812. Similar reasoning doomed a similar argument by the purchaser in the Kentucky decision of *Revenue Cabinet*.[26]

---

[19]*Knudsen, supra,* 12 Cal.App.3d 47.
[20]*Knudsen, supra,* 12 Cal.App.3d at page 55.
[21]See Commercial Code section 6106.4, subdivision (b).
[22]Section 6811.
[23]*Knudsen, supra,* 12 Cal.App.3d at pages 53-55.
[24]*Buckles, supra,* 57 Cal.App.2d at page 81.
[25]*Buckles, supra,* 57 Cal.App.2d at page 81.
[26]*Revenue Cabinet, supra,* 890 S.W.2d at page 640.

Some of the decisions that construe successor liability statutes say those statutes are to be read broadly to further the public interest in tax collection.[27] Other decisions mention the principle that tax laws are to be construed strictly in favor of the taxpayer, especially where one person is held to pay the tax of another.[28] These principles of interpretation, however, have little use when the relevant statutory language is as clear as it is here.[29]

### 2. Bulk Sale Interpleader Action to Resolve Multiple and Conflicting Creditor Claims Exceeding the Purchase Amount

■ The Schnyders also argue that where multiple and conflicting creditor claims are presented that exceed the purchase price, interpleader is the appropriate course of conduct. The argument is that since section 6811 does not address this dilemma, the buyer of the business in a bulk sale must look to the bulk sales law, which authorizes an interpleader action and delineates a priority of claims.[30]

This argument, however, would deny the state the specific remedy of successor liability in those situations where it is most needed. Our research has not disclosed any decision in which the bulk sales law (i.e., art. 6 of the national U. Com. Code) has trumped a successor liability statute. In fact, the cases go the other way. Two reasons are usually given. The first is that the public interest in the collection of taxes outweighs the private interest in the transfer of business assets. The second is that the successor liability statutes set forth a special requirement in contrast to the more general bulk sales statutes, or provide a remedy distinct from the bulk sales remedies.[31]

These views are echoed by a California appellate decision, *Monastra*.[32] *Monastra* noted that the "central purpose of the bulk sales statutes is to afford a merchant's creditors an opportunity to satisfy their claims *before* the

---

[27]*Bank of Commerce, supra,* 585 S.W.2d at page 581; *Red, White & Blue, supra,* 690 A.2d at page 439; see *Gottsch Feeding Corp. v. State of Nebraska* (2001) 261 Neb. 19 [621 N.W.2d 109, 117] (*Gottsch*), and cases cited therein.

[28]*Knudsen, supra,* 12 Cal.App.3d at pages 52-53; *In re McKeever* (1991) 169 Ariz. 312 [819 P.2d 482, 484].

[29]See *Gottsch, supra,* 621 N.W.2d at pages 117-118.

[30]Commercial Code sections 6106.2, subdivision (e), 6106.4.

[31]See Annotation, Validity and Construction of State Statute Making Successor Corporation Liable for Taxes of Predecessor (1975) 65 A.L.R.3d 1181, 1187 (Annotation); *Bank of Commerce, supra,* 585 S.W.2d at page 581; *Carlton Southwest, Inc. v. Oklahoma Tax Commission* (1989) 1989 Okla. Civ.App. 40 [781 P.2d 1192, 1195]; *Red, White & Blue, supra,* 690 A.2d at page 440; *Mr. Pizza II, Inc. v. Comptroller of the Treasury* (2001) 141 Md.App. 253 [785 A.2d 767, 769-770] (*Mr. Pizza II*).

[32]*Monastra, supra,* 43 Cal.App.4th 1628.

merchant can transfer his or her assets and vanish with the sale proceeds."[33] This does not mean, said *Monastra*, that the bulk sales statutes were "intended to *substitute*" for other remedies available to injured creditors or that the Legislature, in adopting the bulk sales laws, had any illusion that the bulk sales requirements would furnish an adequate substitute for such remedies.[34] The other remedies at issue in *Monastra* were post-sale remedies dealing with fraudulent transfers; California's successor liability statutes cover pre-sale and post-sale contexts.

To support their interpleader argument, the Schnyders note that the present matter involves a mix of conflicting creditor claims that exceeds the purchase price, including superior federal tax claims, and that an interpleader action can accommodate this mixture. The dilemma posed by such claims, and the interplay between statutes on bulk sales and those on successor liability, were discussed in a California law review article nearly 50 years ago.[35] The author of that article concluded that if "the seller cannot or will not provide funds to discharge the conflicting claims, the buyer's only practical alternative may well be to back out of the transaction."[36] That is the point. The buyer of a business that owes state sales or use taxes cannot hide behind the bulk sales law and avoid personal liability as a successor.[37] Practical choices must be made, and successor liability is a factor to consider. Successor liability statutes exist so that the transfer of business assets cannot be used to evade the payment of taxes.[38] The wisdom, fairness, or economic policy underlying sections 6811 and 6812 are matters for the Legislature.[39] As the *Red, White & Blue* court noted in addressing an argument that successor liability statutes are unfair because they endanger business deals and waste assets, the "requirements of the [successor liability statutes] may be onerous in some cases, but they are nonetheless clear. '[T]he fairness of the . . . tax is within the prerogative of the legislature, and not of this court.' "[40]

The Schnyders also maintain that section 6811's reference to "sells out his business or stock of goods" necessarily incorporates the application of the bulk sales law. We disagree since nowhere in the language of section 6811 is

---

[33]*Monastra, supra,* 43 Cal.App.4th at page 1642.

[34]*Monastra, supra,* 43 Cal.App.4th at page 1642.

[35]Ring, *Bulk Sales Problems in California* (1954) 42 Cal.L.Rev. 579, 588-589 (*Bulk Sales Problems*).

[36]*Bulk Sales Problems, supra,* 42 Cal.L.Rev. at page 589.

[37]See *Red, White & Blue, supra,* 690 A.2d at page 440; *Mr. Pizza II, supra,* 785 A.2d at page 770.

[38]See Annotation, *supra,* 65 A.L.R.3d at page 1187.

[39]See *Red, White & Blue, supra,* 690 A.2d at pages 439-440.

[40]*Red, White & Blue, supra,* 690 A.2d at page 440.

bulk sales mentioned. The language of section 6811 concerns exclusively successor liability.

Finally, the Schnyders argue they should not be forced to pay the tax of a third party simply because the Board was unable to prove its right to the purchase proceeds in the interpleader action. The Schnyders again fail to recognize the distinct nature of the successor liability remedy available to the Board. As the court in *Revenue Cabinet* put it, under a successor liability statute the "taxing authority need not exhaust collection remedies against a prior owner, nor proceed in a traditional sense against any balance owed to the seller. The purchasers may suffer direct assessment."[41] The Board did not fail to prove its case in the interpleader action. It disclaimed any interest in the interpled funds, choosing instead to rely on the successor liability statutes.

### 3. *Collateral Estoppel*

■ The Schnyders contend the Board is collaterally estopped from imposing successor liability upon them because the Board's stipulation in federal court disclaimed any interest it may have had in the interpled funds. We disagree.

For collateral estoppel (issue preclusion) to apply, the foreclosed issue must have been *"actually litigated and determined"* in a prior action.[42] The issue of the Schnyders' successor liability under sections 6811 and 6812 was not actually litigated and determined in the interpleader action. The Board merely disclaimed any interest it may have had in the interpled funds; the distinct question of successor liability was not litigated. Consequently, the doctrine of collateral estoppel does not apply.

In a related statement, the Schnyders hint at an equitable estoppel theory. They maintain the Board's stipulated disclaimer in the interpleader action forecloses the Board from pursuing successor liability. For equitable estoppel to apply, the party to be estopped must have done or said something to induce another party to believe that certain facts exist and to act on that belief.[43] That is not the case here. Prior to its stipulated disclaimer, the Board (1) warned the Schnyders that they could become liable for any unpaid sales and use taxes under the successor liability statutes if the Board did not issue a certificate of payment, and that compliance with the bulk sales law would

---

[41] *Revenue Cabinet, supra,* 890 S.W.2d at page 640.

[42] See 7 Witkin, California Procedure (4th ed. 1997) Judgment, section 354, page 915.

[43] Evidence Code section 623; *In re Lisa R.* (1975) 13 Cal.3d 636, 645 [119 Cal.Rptr. 475, 532 P.2d 123, 90 A.L.R.3d 1017]; see 11 Witkin, Summary of California Law (9th ed. 1990) Equity, section 177, pages 858-860.

not absolve this liability; (2) determined that the Schnyders were personally liable under the successor liability statutes for Arbuckle's unpaid sales and use taxes in the amount of $30,000; and (3) explicitly informed the Schnyders that the interpleader action did not concern the issue of their liability as successors.

## DISPOSITION

The judgment is affirmed

Scotland, P. J., and Robie, J., concurred.